### In re HYLAND'S WILL.

(Surrogate's Court, New York County. February 19, 1892.)

WILLS—SIGNING BY MAKING MARK—EVIDENCE.

Code Civ. Proc. § 2620, provides that "if all the subscribing witnesses, or, if a subscribing witness is dead, * * * the will may nevertheless be established upon proof of the handwriting of the testator and of the subscribing witnesses, and also of such circumstances as would be sufficient to prove the will upon the trial of an action." Held that, where testator signed his will by a mark, and one of the subscribing witnesses is dead, the testimony of the surviving witness as to the making of the mark by testator is sufficient without confirmatory testimony by others.

Application for the probate of the will of Daniel Hyland, deceased. Granted.

Arthur Van Siclen, for proponent.

RANSOM, S. The decedent signed his will by a mark. On the face of the paper it was properly attested by two subscribing witnesses, whose signatures follow the recitals in a full attestation clause. One of them, Metz, has since died. Lawler, the surviving witness, testifies to all the facts necessary to show the proper execution of the instrument. The provisions of the Revised Statutes, and of the Code, in respect to the execution of wills, are substantially alike. 3 Rev. St. (6th Ed.) p. 59, § 11; Code Civ. Proc. § 2620. The language of the Code is:

"If all the subscribing witnesses, or, if a subscribing witness is dead, * * * the will may nevertheless be established upon proof of the handwriting of the testator and of the subscribing witnesses, and also of such circumstances as would be sufficient to prove the will upon the trial of an action."

The real question to be decided is whether the evidence of Lawler, the surviving witness, of the making of the mark by the decedent, without confirmatory testimony by others, is sufficient, under the law, to admit the will. The subject has been considered by various surrogates in this state. In 1867, Surrogate Tucker, of this county, (In re Walsh, 1 Tuck. 132,) held that a will subscribed by a mark could not be admitted if the second subscribing witness could not be produced. In 1870 the surrogate of Orange county criticised this conclusion, holding that Surrogate Tucker must have overlooked an important particular of the section of the statute which provided for the proof "of such other circumstances as would be sufficient to prove such will on a trial at law;" and he held that, if others present at the time of the execution proved the making of the mark by the testator, it was sufficient to admit the will to probate. In re Simpson's Will, 2 Redf. Sur. 29. In 1886, in Re Reynolds' Will, 4 Dem. Sur. 68, Surrogate Coffin, of Westchester county, stated that in

such a case "it is indispensably requisite that the handwriting of the testator be proven, which can be done by some one sufficiently familiar with the cast or form of the writing of the person to enable him to identify it as his, but that a cross mark. has no such cast or form as to distinguish it from a like mark made by any other individual, and cannot be the subject of expert testimony; but the difficulty would doubtless be obviated were witnesses able to testify that they were also present, and saw the deceased make his mark." As there was no other than the surviving subscribing witness present to prove the fact, probate was refused. In 1887, in Worden v. Van Gieson, 6 Dem. Sur. 237, the surrogate of Monroe county denied probate of a will signed by a mark. It had a full attestation clause. Smith, the attorney who drew the paper, and was a subscribing witness, was dead. The other witness testified to Smith's signature, and said that, though the decedent told him the paper was her will, and how she made it, he did not see her sign it, nor did she tell him that she had signed it. In the absence of other testimony, the surrogate held that there was a failure of proof of either the signing or the acknowledgment of the mark. In Re Dockstader, 6 Dem. Sur. 106, the surrogate of Montgomery county took a view radically different from those expressed in antecedent decisions, holding the testimony given by a living subscribing witness of the making of the mark by a testatrix was proof of her handwriting, and was sufficient. In 1889, in Re Phelps, (Surr.) 5 N. Y. Supp. 270, led by the general current of previous decisions, I denied probate to the will. The decedent was a patient in a hospital in Philadelphia, and the two subscribing witnesses were Stewart, the hospital apothecary, who was the draughtsman of the paper, and Kennedy, a patient who died before it was offered for probate. The will had a full attestation clause. Stewart was examined under a commission, on interrogatories more or less formal in their character, and his testimony proved the proper execution of the instrument and the making of the mark by the decedent. Following the most liberal precedent decision except In re Dockstader, supra, I held that, unless the testimony of other persons who were present at the time of the execution was given, (and it was shown that there were others about at the time,) probate must be denied. My decision may also have been influenced by the fact that the surviving witness was not examined in open court, and testimony given in response to formal interrogatories is seldom satisfactory to a trial court. But in 1891 I was led to, by a more thorough consideration of the question, change my view, and on the evidence of the living witness, without the testimony of others, I admitted the will of Ann Glass Neely to probate. Worden v. Van Gieson, supra, was reviewed in 1888 by the general term of the fifth department. 47 Hun, 5. Judge Haight, in delivering the opinion of the court, said:

"It was therefore necessary, in order to establish this will, that the signature of the testatrix should be proved. This could be done by any person who saw her make her mark, or by her acknowledgment that she had so executed the will to each of the subscribing witnesses. As we have seen, the only evidence upon the subject is the fact of her publication of the

instrument by declaring it to be her last will and testament. The question is, therefore, is this a compliance with the statute as an acknowledgment of her subscription to the will?"

The court held that it was not, and on this ground affirmed the decision of the surrogate. But Judge Haight did not give any opinion as to the sufficiency of the evidence of the surviving subscribing witness if he had testified that all the requirements of the statute had been complied with, including the making of the mark by the testatrix, or the acknowledgment of it as her signature. Nor was the question considered whether the attestation clause could be accepted as evidence of execution, though in several cases it had been so decided by the court of appeals. Hence, we have no decisions in our state, except the few rendered by the trial judges, and in these we have seen the conclusions in some cases are diametrically opposed, and in the others an intermediate ground is taken.

As the adjudications in other states and even in the English courts, so far as I have been able to investigate them, do not furnish a parallel case, I deem it advisable to review the subject in the light of elementary principle, in the hope that my decision may afford a precedent that will be accepted until a higher tribunal shall find otherwise. What constitutes "handwriting," in the legal sense of the term, must be first considered. It is defined to be the "cast or form of writing peculiar to each hand or person." If the decedent, in forming his signature, has made the effort to use the letters of any known alphabet, but had so far failed that no letter bore resemblance in form to the one it was intended to reproduce, and the aggregate could only be recognized as his signature by those who had seen him write, and were familiar with its general appearance, the testimony of the surviving witness, if it commended itself to the confidence of the court, even without an attestation clause to the instrument, would have been sufficient, with the proof of the other essential facts, to admit the paper to probate. But one who has never been taught to write cannot make letters. A person highly educated may, by physical disability, be too feeble to guide a pen. In such case the cast or form of his writing cannot be made manifest by the result of his effort. But the trend of the decisions shows the courts interpret the law in a spirit of liberality, that it may not defeat, but rather sustain, the wishes of testators, when the proofs show that the requirements of the statute in respect to execution have been substantially complied with, though in a literal sense they have not. Hence, that disability growing out of illiteracy or physical weakness shall not work the deprivation of the right of a person to execute an instrument, they have held that a mark or symbol, in whatever form, made by a testator, with or without aid, or if the physical act of making the mark was in fact wholly done by another, and he did nothing except to feebly touch the pen, or even if his name were written by another at his request, and he made no mark, the result in either case is equivalent, and may stand in place of a subscription by the proper hand of the testator. Jackson v. Jackson, 39

N. Y. 153. I have said that no appellate court in this state has declared the value of the testimony of a surviving subscribing witness to the making of a mark by a testator, unconfirmed by the statements of others present at the execution of the will; nor have I been able, in the time I have had at my disposal, to find precedents in the adjudications in other states to meet the facts of this case. An English case decided in 1843—In re Goods of Ashmore, 3 Curt. Ecc. 757—was one in which the proof of the subscriptions of the two attesting witnesses by marks was considered. The testatrix was a woman of 86 years of age, who, after writing her codicil, took it into another room to two servants, Anne Cole and Elizabeth Sharpe, both of whom were illiterate, and requested them to make their marks to the paper, and each did as requested in her presence. The testatrix then wrote their names opposite the marks. By mistake, she wrote the wrong surname of one of the witnesses,—Elizabeth Cummins instead of Elizabeth Sharpe. No other persons were present at the execution to prove the making of the marks by the witnesses, nor does it appear that there was anything in the character of the marks to enable the witnesses to identify them as those they had made, though the learned judge says, in his brief published decision, that they recognized their marks. Nor was it shown that there was an attestation clause to aid probate by its recitals, and it is more than probable that the judge, in admitting the will, was moved by the fact that the codicil was in the handwriting of the testatrix; that it bore upon its face the evidences of genuineness; that it was apparently executed in good faith; and that the witnesses, whether they were really able to identify their marks or not, did recollect having made them as signatures to a paper of a testamentary nature. But, under the decisions in this state, an attestation clause is one of the "circumstances" which, with "proof of the handwriting of the testator and of the subscribing witness," "would be sufficient to prove the will upon the trial of an action," and comes in aid of probate in cases of defective memory of witnesses, caused by the lapse of time from the date of the instrument to the examination of the witnesses, when there is an absence of evidence contradicting its recitals. Brown v. Clark, 77 N. Y. 369; In re Pepoon, 91 N. Y. 255. Nor does the value of such a clause as a factor to establish the execution of wills end with cases of the nonrecollection of witnesses of the performance of the acts necessary thereto. In re Cottrell, 95 N. Y. 329, decided in 1884, was the case of a will to which there was no attestation clause in due form, signed by a man and wife with whom the testator had boarded. Both witnesses testified that none of the formalities required by law were complied with in their presence, and they denied that either was present at the execution or signed the attestation clause; yet the will was sustained, it being shown that both the will and the signature at its end were in the handwriting of the testator; that during his sickness he had said that his will, which he described as executed with the two witnesses as present, was either among his papers or in the hands of his executor, and it was in fact found among his papers. Though

the will was in his own handwriting, it was proven that it had been more or less copied from a previous will.    It was also shown to the satisfaction of the court, by the opinions of experts who had made a comparison of the signatures of the witnesses to the attestation clause with others admitted to be theirs, that they were identical. The decision of the surrogate admitting the will to probate was sustained.    In Re Cottrell, the court say also:

"It was always considered to afford a strong presumption of compliance with the requirements of the statute in relation to the execution of wills that they had been conducted under the supervision of experienced persons, familiar, not only with the forms required by law, but also with the importance of a strict adherence thereto."

Applying these principles to the matter under consideration, I hold that the testimony of Lawler, with nothing to throw discredit upon his statement that he saw the decedent make his mark, is sufficient evidence of the fact, when considered in connection with all the circumstances attending the transaction.    The written portions of the paper are in the handwriting of Metz, the deceased subscribing witness, who was a lawyer.    It is intelligently drawn, and is couched in the language of the law appropriate to such documents, and has a full attestation clause.    An entry in the cash book of Metz shows money received for his services in the matter about the time of the execution.    Lawler, the living witness, testifies that the testator declared the paper to be his will, that he requested each of the subscribing witnesses to attest the execution by their signatures, and that each did so; and the signature of Metz is proved by the evidence of two persons.    The will is a natural one. There is nothing suspicious on its face.    All the circumstances attending its original execution, as set forth in the testimony, point to the good faith and genuineness of the whole transaction.    I am satisfied that no question would have been raised in respect to the sufficiency of the proof of the execution, but for the decision in Re Walsh, supra, which seems, except in one instance, (In re Dockstader, supra,) to have more or less influenced the decisions of other surrogates, myself included in one instance, though Surrogate Tucker's view has no support in the adjudications of the courts of this or other states, so far as I have been able to discover.    While it is desirable to have the testimony of both witnesses to prove the making of the mark by a testator, yet, when one cannot be produced, and no other persons were present, the testimony of the other, if his character is unimpeached, when supported by the apparent good faith of the transaction and a full attestation clause, I hold to be sufficient.    The will may be admitted.