## *In re* SULLIVAN'S WILL.

1. Wills — Attestation — Death of Subscribing Witnesses — Statutes.

The death of the subscribing witnesses to a will is a contingency covered by section 5789, 2 How. Stat., providing that, if the witnesses are competent at the time of the attestation, their subsequent incompetency, "from whatever cause," shall not prevent the probate of the will, if it be otherwise satisfactorily proved, rather than by section 5803, providing for the admission of testimony to prove the sanity of the testator and the execution of the will where none of the subscribing witnesses shall "reside in the State" at the time appointed for proving the will.

2. Same—Proof of Execution—Sufficiency.

A finding that a will, the subscribing witnesses to which were dead at the time of its probate, was "satisfactorily proved," within the meaning of section 5789, is sustained by evidence

that the testatrix was possessed of testamentary capacity at the time of its execution; that it was in the handwriting of a practicing lawyer of good repute; that the attestation clause was in compliance with the provisions of the statute; that, on the day of its execution, it was delivered into the custody of the probate judge, who gave his receipt therefor; that the testatrix intrusted the receipt to her sister-in-law, to be delivered to the beneficiary upon the death of the testatrix; and that in subsequent conversations, the last of which occurred a short time before her death, the testatrix indicated that she understood what the paper was, and professed anxiety that it should be properly delivered.

Error to Kent; Adsit, J. Submitted April 30, 1897. Decided September 14, 1897.

Patrick Sullivan presented for probate the will of Catherine Sullivan, deceased. From an order allowing the same, James Sullivan and John Sullivan appealed to the circuit court, where the order was affirmed. Contestants bring error. Affirmed.

*Thompson & Temple* and *Birney Hoyt*, for appellants.

*W. D. Fuller*, for appellee.

MOORE, J. May 3, 1882, Catherine Sullivan made a paper, afterwards probated as a will. The paper is in the handwriting of John McNamara, one of the subscribing witnesses, except the signature of the other subscribing witness. The signing and attestation are as follows:

"In witness whereof, I have hereunto set my hand and seal this 3d day of May, A. D. 1882.

"CATHERINE $\overset{\text{her}}{\underset{\text{mark}}{\text{X}}}$ SULLIVAN.   [Seal.]

"The above instrument, consisting of one sheet, was at the date thereof signed, sealed, and published and declared by the said Catherine Sullivan as and for her last will and testament, in the presence of us, who at her request, and in her presence, and in the presence of each other, have subscribed our names as witnesses thereto.

The words 'five hundred dollars' on second page were erased previous to the execution of the above will.

"JOHN C. QUINSEY, of Grand Rapids, Michigan.
"JOHN McNAMARA, Grand Rapids, Michigan."

August 8, 1882, John McNamara died. The other witness died July 14, 1892. Catherine Sullivan died March 18, 1896. Mrs. Sullivan was unable to write. The same day the paper was executed, it was left at the office of the probate judge, and a receipt given for it. This receipt was put in an envelope, and 12 or 13 years before the death of Mrs. Sullivan was delivered by her to her sister-in-law, Mrs. Howell, with instructions to deliver it to Patrick Sullivan, who was then absent from the State. After the death of Mrs. Sullivan, the paper was found in the office of the judge of probate. It was offered for probate as a will, and allowed, from which allowance an appeal was taken to the circuit court, where it was again allowed, from which allowance an appeal is taken to this court. No witness testified to seeing the testatrix make her mark, or to seeing any person make her mark for her, or to hearing her authorize any one to sign the will for her. There is testimony to the effect that Mrs. Sullivan frequently spoke to Mrs. Howell about her custody of the receipt she had delivered to her, and shortly before her death indicated anxiety to have it given to Patrick, stating it was a paper for Patrick, to show there was a package in some court. Testimony was also offered showing that Mrs. Sullivan, at the time the paper was executed, was of sound mind, and competent to make a will. On the part of the contestants, there is evidence that Mrs. Sullivan said she should make no will. The contest is made upon the ground that there is a failure to prove the execution of the will in any of the methods provided by the statute, and that for that reason it ought not to have been probated.

The record discloses that Mr. Quinsey was competent to be a witness at the time the paper was executed, but afterwards became insane, and died before the paper was

probated. It also discloses that Mr. McNamara, at the time the paper was drawn, was a practicing lawyer, residing in Grand Rapids. The provisions of the statute in relation to the execution and probating of wills, so far as they have any possible bearing upon the question at issue here, are to be found in the following sections of 2 How. Stat., which read:

Section 5789. "No will made within this State, except such nuncupative wills as are mentioned in the following section, shall be effectual to pass any estate, whether real or personal, nor to charge or in any way affect the same, unless it be in writing, and signed by the testator, or by some person in his presence and by his express direction, and attested and subscribed in the presence of the testator by two or more competent witnesses; and if the witnesses are competent at the time of attesting the execution of the will, their subsequent incompetency, from whatever cause it may arise, shall not prevent the probate and allowance of the will, if it be otherwise satisfactorily proved."

Section 5803. "If none of the subscribing witnesses shall reside in this State at the time appointed for proving the will, the court may, in its discretion, admit the testimony of other witnesses to prove the sanity of the testator and the execution of the will; and, as evidence of the execution of the will, may admit proof of the handwriting of the testator and of the subscribing witnesses."

We think it apparent from the reading of the last section that it refers to a case where the witnesses to the will are living, but beyond the jurisdiction of the court, and that, under the provisions of section 5789, if the attesting witness, at the time the will is executed, is competent to be a witness, his subsequent incompetency by reason of sickness, death, or from whatever cause the incompetency may arise, shall not prevent the probate and allowance of the will, "if it be otherwise satisfactorily proved."

Were the probate court and the circuit court justified in their conclusion that the will was satisfactorily proved? It was shown beyond controversy that Mrs. Sullivan was competent to make a will at the time it was made. The paper is in the handwriting of Mr. McNamara, a prac-

ticing lawyer, and a man in good repute, so far as the record discloses. The attestation clause was in compliance with the provisions of the statute. On the same day the paper was executed, it was delivered into custody of the court having jurisdiction over wills. A receipt was given for it, which passed into the custody and control of Mrs. Sullivan, and by her was intrusted to her sister-in-law, to be delivered to the beneficiary named in the will upon the death of Mrs. Sullivan. Subsequent conversations between Mrs. Sullivan and Mrs. Howell, the last one of which was shortly before Mrs. Sullivan's death, indicated that Mrs. Sullivan understood what the paper was that she had intrusted to her friend, and understood that it related to a paper that was then in the custody of the court, in which the son, her beneficiary, was interested. What inferences may reasonably be drawn from such testimony? We think this testimony may be regarded as establishing beyond controversy—*First*, that Mrs. Sullivan was competent to make a will; *second*, that the paper was drawn by Mr. McNamara, and that it was witnessed by Mr. Quinsey and Mr. McNamara; *third*, that the attestation clause is established by competent testimony. If this be regarded as established, what inferences may be drawn from it? In the absence of any testimony impeaching the act, I think some inferences as to the existence of the facts therein stated are to be drawn from the draft of an instrument made in the form provided for by the statute, which instrument is shown to have been drawn by a reputable attorney, an officer of this court. Indeed, some inferences are to be drawn from the attestation clause itself, irrespective of who drew it, when it is once proven. As said in *Abbott* v. *Abbott*, 41 Mich. 540:

"We know of no rule of law which makes the probate of a will depend upon the recollection, or even the veracity, of a subscribing witness. The law, for wise and obvious reasons, requires such instruments to be executed and attested with such precautions as will usually guard against fraud. But if the forgetfulness or falsehood of a

114 Mich.—13.

subscribing witness can invalidate a will, it would be easy, in many cases, to use such artifices or corruption as would render the best will nugatory. Their evidence is not conclusive either way, nor does the law presume that they are either more or less truthful than others. It presumes they had when they signed full knowledge of what they were doing, and in case they are dead their attestation, when proved, is *prima facie* evidence that all was done as it should be."

In *Barnes* v. *Barnes*, 66 Me. 286, it was said:

"It would be monstrous if a will was to be defeated because, after a great lapse of time, the witnesses may have forgotten the facts attending its execution. A proper attestation clause, showing that all the statutory formalities have been complied with, will, in the absence of proof to the contrary, be presumptive evidence of the fact after the death of the attesting witnesses, or their failure to recollect what took place at the execution of the will."

In *Nickerson* v. *Buck*, 12 Cush. 332, the question involved was whether or not the will had been duly executed according to the requirements of law. It appeared that the will was written by John Kenrick, the first attesting witness, and that he had since deceased. It was said:

"All that is requisite to the due execution of a will is the actual signature of the same, written by the testator, or by some one in his presence and by his express direction, and that the will be attested and subscribed, in the presence of the testator, by three or more competent witnesses [Rev. Stat. 1836, chap. 62, § 6]. The signature of the testator in this case was, so far as he personally subscribed it, a signature by making an 'X,' but his name was appended to the cross, to indicate the intended signature, and from the comparison of handwriting it is quite obvious that it was thus written by John Kenrick, whose name is first borne on the list of attesting witnesses. It is proved that this witness had deceased before the trial. But the death of an attesting witness, or of all of the attesting witnesses, is not to defeat the validity of the will if in fact duly executed. It changes the form of the proof, and allows of the introduction of secondary evidence of the due attestation and execution of the will. Such attestation is then to be shown as it would be in the

case of deeds, by proof of the handwriting of the witness. That being shown, *prima facie*, it is to be taken to be true, and to have been put there for the purpose stated, in connection with the signature. It is to be assumed, as regards that witness, that he duly attested the will in the presence of, and at the request of, the testator. In considering the sufficiency and weight of the evidence to establish the due and proper execution of this will, the fact of the death of this witness, and the presumptions that arise from proof of his handwriting, are somewhat material. As regards this witness, if nothing appears in other parts of the evidence to control the presumption resulting from proof of his handwriting, it may be taken that, as to his attestation, it was properly made to the signature by the testator."

See, also, *Chaffee* v. *Baptist Missionary Convention*, 10 Paige, 85; *In re Kellum's Will*, 52 N. Y. 517; *Brinckerhoof* v. *Remsen*, 8 Paige, 488.

We think, applying the reasoning to be found in these cases to the provisions of our statute, and the evidence disclosed by the record, that it fully justifies the conclusions of the probate and circuit courts.

We have not overlooked the decisions, cited by counsel, of *In re Reynolds*, 4 Dem. Sur. 68; *Worden* v. *Van Gieson*, 6 Dem. Sur. 237; *In re Walsh's Will*, Tuck. 132; *In re Phelps' Will*, 1 Con. Sur. 463,—but those cases were not followed in the later case of *In re Hyland's Will*, (Surr.) 27 N. Y. Supp. 961, and a very good reason was shown why they should not be. See, also, *Peebles* v. *Case*, 2 Bradf. Sur. 226; *Hitch* v. *Wells*, 10 Beav. 84.

Judgment is affirmed.

The other Justices concurred.