See, also, 26 N.J. Misc. 47, 56 A.2d 414. *Page 355 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 356 
This is a suit seeking to restrain the defendant-landlord from interfering with the quiet and peaceful possession of the plaintiff-tenants. The facts as alleged in the pleadings and as adduced at the time of trial demonstrate that on or about September 1, 1939 the parties hereto entered into a written lease signed by the plaintiffs and the defendant for the rental of a certain parcel of real estate situate in Runnemede, New Jersey. The term as expressed in this lease was "for the term of sixty months (60)" from the first day of September, 1939.
Alfred E. Weber testified that sometime prior to September 1, 1944, that being the date of the expiration of the term provided for in said lease, he requested the defendant to renew the lease for an additional term of five years. This the defendant refused to do, unless the plaintiffs would reconstruct or repair a cesspool on said premises. The plaintiffs did thereafter undertake the reconstruction or repair of said cesspool and completed the same within the month succeeding September 1, 1944. Sometime subsequent to September 1, 1944 the defendant requested the plaintiffs to produce and deliver *Page 357 
to him the original lease. Thereafter, and still within the month of September 1944, the defendant returned the original lease, in the body of which had been inserted the following provision: "renewed for sixty months (60) from the first day of September, 1944."
The defendant, on the other hand, testified that the lease had been delivered to him at his request in connection with an oft-repeated and almost continual demand by the plaintiffs for a renewal thereof. He disputed plaintiffs' testimony that the cesspool had been completed in September, and further testified that the old lease, with the above phraseology, was not returned to the plaintiffs until January 1945. When asked the direct question as to why he had inserted the above phraseology and re-delivered the lease to the plaintiffs, he stated that it was as a result of their plaguing him for a renewal; that he desired to do the right thing; and that he thought this renewed the lease. Thereafter, there ensued varied and various attempts by the defendant to re-obtain possession of the leased premises, including several actions for such possession in the Camden District Court.
On the cardinal questions there is no dispute. The lease dated 1939 was delivered to the defendant after the expiration of the term therein provided, for the purpose of obtaining a renewal. Defendant typed the words above quoted in the body of the lease, above the signatures written in 1939, with the intent of renewing the lease for a period of sixty months and then delivered the same to plaintiffs.
The very narrow and restricted question here involved is whether the lease, as offered in evidence, complies with R.S.
25:1-1, which reads as follows:
"All leases, estates, interests of freehold or term of years, or any uncertain interest of, in, to or out of any real estate heretofore or hereafter made or created by livery of seizin only, or by parol, and not put in writing, and signed by the parties so making or creating the same, or their agents thereunto lawfully authorized by writing, shall have the force and effect of leases or estates at will only, and shall not, either in law or equity, have any other or greater force or effect, any consideration for making any such parol leases, estates or interests notwithstanding.
"This section shall not apply to leases not exceeding the term of three years from the making thereof." *Page 358 
It is conceded that the alleged tenancy commencing September 1, 1944, being for a period longer than three years, must be in writing "and signed by the parties." Defendant contends that the alleged lease, as offered, does not comply with such statute, in that it was not physically signed in 1944. We are, therefore, confronted with the question as to whether, under the facts, the signatures appended to the lease on September 1, 1939 can be considered the signatures to a lease, the term of which was to commence September 1, 1944.
It is to be remembered that the section above referred to is a portion of our Statute of Frauds which we obtained from the English statute entitled "An Act for the Prevention of Frauds and Perjuries." This statute was originally enacted to prevent fraud and perjury in the enforcement of obligations depending for their evidence on the memory of witnesses by requiring certain enumerated contracts and transactions to be evidenced by a writing signed by the parties. There is no requirement in the statute that the signature be in definite or particular form. It has been held that typewritten or printed names, signatures in ink or pencil, or any name or symbol used by a party with the intention of constituting it his signature, is sufficient to comply with the statutory requirements. 37 C.J. Sec., par. 22; 40 Am. Jur., par. 377.
Restatement of the Law, Contracts, par. 210, reads as follows:
"The signature to a memorandum under the Statute may be written or printed and need not be subscribed at the foot of the memorandum, but must be made or adopted with the declared or apparent intent of authenticating the memorandum as that of the signer."
It is therefore apparent that in the first instance the lease would have been effective if it contained a name, initial or symbol affixed thereto by the parties with the intention that it should be recognized as their signatures.
In Mutual Benefit Life Insurance Company v. Brown,30 N.J. Eq. 193, the court had before it the question of whether a conveyance of real estate complied with the Statute of Frauds where the grantor's name was not written by him but was *Page 359 
written in his presence and by his direction. In considering this question, the court there said:
"But the authorities hold that if the grantor's name is written by the hand of another, in his presence and by his direction, it is his act, and the signature, in point of principle, is as actually his as though he had performed the physical act of making it. Gardner v. Gardner, 5 Cush. 483; Irvin v.Thompson, 4 Bibb 295; Ball v. Dunsterville, 4 T.R. 313; 2Greenl. Cruise 333, sec. 60; Story on Agency, sec. 51; 2Greenl. Ev. sec. 295. Mr. Browne, in his treatise on the statute of frauds, seems to dissent from this view. He does not consider Gardner v. Gardner as an authority directly on the point, inasmuch as the statute under which it was decided did not, in express terms, require the authority of the agent to be evidenced by writing; and therefore says, when the question arises under a statute containing that provision, a problem of considerable difficulty will be presented. Browne on Frauds,sec. 12. A person physically unable or too illiterate to write his name, may sign by making a cross, a straight or a crooked line, a dot, or any other symbol. Simply making a mark by bringing the pen in contact with the paper is sufficient. The right to sign in any of these modes cannot, in principle, depend wholly upon the question of capacity.
"I do not believe the legislature intended to give any such extraordinary virtue to the mere physical act of touching a pen to paper as to mean that a deed should be valid if it was done, but invalid if it was not done, though the grantor adopted the signature made for him by a delivery of the deed and an acceptance of the consideration. The essential ingredient of the transaction, in the language of Chief Justice Shaw, is the disposing purpose, an intention, by the act done or directed, to divest himself of title and pass it to the grantee. If this is the purpose of the grantor's mind, the deed is his, though his name be traced by the hand of another."
It follows, therefore, that if in the first instance the landlord was not required to actually and physically append his own signature to the instrument upon which suit is brought, that it would as well not have been necessary in the event of an alteration or modification of the same instrument. Whether the act accomplished by the defendant was an alteration or modification of the original lease, or whether it is to be considered a re-executed and re-published document, is of no moment. The same rules would apply in either event. An alteration or modification, even of a sealed instrument which has been previously signed, is as effective as if such signature were printed subsequent to the alteration. *Page 360 
 Volume 6, Williston on Contracts, page 5321, reads as follows:
"A sealed instrument takes its validity from delivery, and the maker may adopt a signature or seal previously made and make them his own by delivering them as his. A re-delivery, therefore, of a sealed instrument by the obligor after it has been altered will make it binding in its altered form. A prior consent to an alteration can hardly amount to a re-delivery after the alteration, but if the maker himself assists or takes part in the alteration it would generally be easy to find a new delivery, and courts which, like those of England, hold that there is always a delivery when the maker of a deed indicates his assent to be bound by it as a completed instrument have no difficulty in finding delivery when the maker after an alteration has been made ratifies it."
This rules prevails even though the alterations were originally fraudulent if there is an assent to the altered terms.Re-Statement of the Law, Contracts, page 820, reads as follows:
"If a material and fraudulent alteration is made by one party to a written contract or memorandum, and the other party, with knowledge of the facts, manifests
(a) assent to the altered terms, the manifestation operates as an acceptance of an offer to substitute for the original contract or memorandum an agreement in the altered form;".
It is as well a compliance with the statutes if the parties adopt a prior signature made by them with the intent to authenticate the instrument. 37 C.J. Sec., par. 22.
In Vidvard v. Cushman, 35 Hun, 18, the court had before it an almost identical situation to that now before the court, in that the lease, after original execution but during its term, was altered by the insertion of an additional provision. The court there said:
"By the consent of the parties a new stipulation may be added to a contract subsequent to its execution, if the new stipulation is evidenced and executed in the mode that the original contract is required to be evidenced and executed. (French v. Patton, 9East, 350; Whart. Ev., sec. 624; 1 Chit. Con. (11th Am.ed.), 155; Reed on Statute of Frauds, sec. 454; Leak's Con.,
795.)
"The original lease, and the lease as modified, being for terms longer than a year, were required by the statute of frauds to be in writing and signed by the lessors. The original lease was in writing and so was the modified lease. It is urged that the new lease is not binding, *Page 361 
because it was not re-signed by the lessors and re-delivered. The added stipulation was written in the lease by one of the lessors in the presence and with the assent of the lessee. The signatures of the contracting parties were then upon the lease. This was a good execution of the new or modified lease. (Bluck v.Gompertz, 7 Exchq., 862: Woolley v. Constant, 4 Johns.,
54; Knapp v. Maltby, 13 Wend., 587; French v. Patton, 9East. 350; Leake's Law of Contracts, 814, 815.) The transaction between the parties, as found by the court, amounts to a re-execution and re-delivery of the lease in its modified form, and it became as binding in that form as though it had been re-drafted and re-signed. Re-writing or re-signing, or both, would have added nothing to its validity. As was well said by Justice Vann at Special Term, `the signatures were there and it was intended they should remain there when the alteration was made. The parties regarded and treated them as their signatures to the instrument as changed. Under such circumstances, was it necessary to re-trace or re-write their names? To re-trace with a dry pen would seem absurd, while to re-trace with a wet one would obscure the identity of the signature. Would either of these idle ceremonies adopt the signatures already appended more effectually than simply writing in the words, making the change, in the presence of all the parties and with their consent?'"
See also Brudno v. Kohn, 170 N.E. 581, 34 Ohio App. 133.
It therefore follows that the question of whether the insertion of the phraseology extending the term of a written lease originally signed by the parties but not thereafter re-signed is a compliance with the Statute of Frauds, turns upon the intention of the parties. It revolves about whether they intended to adopt the original signatures. Under the facts, it seems clear that the lease was delivered to the defendant with the intention of obtaining a renewal thereof; that the defendant inserted the phraseology for this purpose, and by his re-delivery to plaintiffs signified his willingness to adopt the original signature and so to be bound. Although there were no formal words used expressing this intent, the acts and conduct of the parties lead only to one conclusion, and that is that it was their intent. The desire to recognize the prior signatures was inartistically expressed but the conversation and conduct is demonstrative of an intention to recognize and republish the original signatures. The lease above referred to is, therefore, considered as complying with the pertinent section of the Statute of Frauds, and the relief requested by the plaintiffs will be granted. *Page 362