MICHAEL J. MATTHEWS, PLAINTIFF, v. ADELAIDE DEANE, JAMES W. MASLAND III, AND ATLANTIC COUNTY BOARD OF ELECTIONS, DEFENDANTS.

Superior Court of New Jersey
Chancery Division Atlantic County

Decided April 17, 1984.

*Edwin J. Jacobs Jr.* for plaintiff Michael J. Matthews (*Tort, Jacobs, Gross & Todd,* attorneys).

*William Cappuccio* for defendant Adelaide Deane.

*Gerald M. Eisenstat* for defendant James W. Masland III (*Shapiro, Eisenstat & Gabage P.C.,* attorneys).

*Oscar N. Gaskins* co-counsel for defendant James W. Masland III.

*Irwin I. Kimmelman,* Attorney General of New Jersey, for defendant Atlantic County Board of Elections (*Donna Kelly-Boccher,* Deputy Attorney General).

GRUCCIO, A.J.S.C.

This matter arises in the course of a challenge to the sufficiency of a recall petition which led to the recall of plaintiff from his position as mayor of Atlantic City, New Jersey on March 13, 1983. The plaintiff and the defendants have made a joint application for a preliminary determination by the court of the validity or invalidity of printed signatures on recall petitions. The narrow issue facing this court is whether registered voters who printed their names on a recall petition after having previously signed their name in the cursive method on their voter registration cards, should be counted by the city clerk when reviewing recall petitions. In the present case, the clerk rejected any name on the recall petition which was printed when an examination of the voter registration card indicated that the name had been signed in the cursive method. All counsel submit that determination of this limited issue will facilitate completion of trial by informing counsel of the necessary proofs.

It is undisputed that a name in printed form can constitute the printer's signature. The recall statute provides that "(A) recall petition ... shall be signed by qualified voters equal in number to at least twenty-five percentum (25%) of the registered voters of the municipality." *N.J.S.A.* 40:69A–169. The statute does not provide a definition of the term "signature". New Jersey case law, however, has defined the term "signature" to be that which an individual *intends* to be his signature. *Weber v. DeCecco,* 1 *N.J.Super.* 353, 358 (Ch.Div.1948); *J.D. Loizeaux Lumber Co. v. Davis,* 41 *N.J.Super.* 231, 238 (App. Div.1956), certification denied 22 *N.J.* 269 (1956). See also 80 *C.J.S., Signatures,* Section 7 at 1292. In construing the signature requirement of the statute of frauds, the *Weber* court made the following observation:

This statute was originally enacted to prevent fraud and perjury in the enforcement of obligations depending for their evidence on the memory of witnesses by requiring certain enumerated contracts and transactions to be evidenced by a writing signed by the parties. There is no requirement in the statute that the signature be in definite or particular form. It has been held that typewritten or *printed* names, signatures in ink or pencil, or any name or symbol used by a party with the intention of constituting it his signature, is sufficient to comply with the statutory requirements. (citations omitted) (emphasis added) *Weber v. DeCecco, supra* at 358.

The recall statute is similar to the statute of frauds in the respect that a signature is required in order to prevent fraud in the submission of recall petitions. Absent a contrary definition within the recall statute, this court is guided by the definition of the term "signature" contained in the *Weber* opinion.

As stated above, the rejection of printed names by the clerk was not based solely on the fact that they were printed. It was the inability of the clerk to accurately compare the printed names on the petition with the cursive signature on the voter registration cards which prevented the clerk from verifying the authenticity of the printed names appearing on the recall petition. This court finds that the clerk acted improperly in summarily rejecting printed names.

The recall statute prescribes specific procedures for the circulation, submission, and certification of recall petitions. *N.J.S.A.* 40:69A–168 et seq. Specifically, recall petitions can only be circulated by persons qualified to vote within the municipality *N.J.S.A.* 40:69A–170. Prior to submission, one signer to the petition (the circulator) must execute an affidavit in which she/he swears that all signatures which appear on the petition are the genuine signatures of the individuals whose names they purport to be. *N.J.S.A.* 40:69A–170. After submission, the clerk must review the petition to determine the number of valid signatures. *N.J.S.A.* 40:69A–170.

In *Stone v. Wyckoff,* 102 *N.J.Super.* 26 (App.Div.1968), certification denied 52 *N.J.* 254 (1968), the Appellate Division discussed the responsibility of the clerk with respect to signatures on a recall petition which are not identical to signatures appear-

ing on voter registration records. The *Stone* court made the following conclusion with respect to signatures:

> (T)he statute merely requires that the signers be "qualified voters," *N.J.S.A.* 40:69A–169, not that their signature be in the form identical with that appearing on the registration records. Many people have more than one "signature". Admittedly, the clerk may have some difficulty in identifying some voters where the form of signature on the petition varies from that in the registration book, and he may for administrative purposes therefore require some proof of identity or reject the name. But once the matter reaches a judicial tribunal, as here, a signature consistent with that of the registered voter, of one residing at the recorded address of the registrant, must be deemed *prima facie* that of the registered voter, and the burden is on any challenger to show the contrary. *Id.,* 102 *N.J.Super.* at 34.

The presumption, as articulated in *Stone,* is that the signatures on a recall petition are genuine. This presumption is reinforced by the requirement that the circulator take an oath verifying the authenticity of each name. This is not to say that in each instance the clerk must blindly accept each printed name as being that of the person whose name appears on voter registration records in cursive form. The clerk may issue a provisional approval of the printed name and allow those submitting the name to provide documentation such as an affidavit of each individual which verifies the authenticity of each signature.

In the present case, the clerk has failed to undertake an initial review of printed signatures to determine whether the addresses next to printed signatures on the petition correspond to the addresses on the voter registration cards and whether the signatures are invalid for any other reason, *e.g.,* duplicates. Accordingly, this court must review the printed signatures to determine their validity. This court concludes that the printed signatures are *prima facie* valid and the burden is on the plaintiff, in the first instance, to demonstrate that the printed signatures do not represent the individuals they purport to represent or that they are invalid for some other reason.

Subsequent to the drafting of this opinion, depositions were taken of 35 of the individuals who printed their names on petitions but signed their names in the cursive method on the

voter registration record.  In each instance, the signer testified that his/her name was "printed" with the intention that it be considered his/her signature.  This result supports the conclusion reached by this court that printed signatures should be considered *prima facie* valid until proven otherwise.