295 N.J. Super. 33 (1996)
684 A.2d 521
IN THE MATTER OF THE ESTATE OF JEFFREY A. HAND, DECEASED.
Superior Court of New Jersey, Chancery Division Probate Part Burlington County.
August 9, 1996.
*34 D. Neil Manuel for plaintiff Norman Hand.
Francis A. Cosky for defendant Marie Hand.
*35 GOTTLIEB, P.J.Ch.
This case involves a challenge to a purported holographic will. It is before me upon the return of an order to show cause seeking the will's admission to probate. The primary issue is whether a holograph can be hand printed or must be in cursive to be in the author's handwriting.
Jeffrey A. Hand died on December 25, 1995. Decedent's brother Norman, the plaintiff, claims that decedent wrote out a holographic will on September 17, 1995. The will is actually dated September 17, 1996, an obvious error. The lined but otherwise originally blank sheet of paper tendered as that holographic will contains the following:
9/17/96
I JEFFREY HAND LEAVE TO MY SISTERS SHARON & SUE MY house & BANK ACC. NORMAN & ADAM MY GUNS & TOOL ADAM GETS MY BOAT NORMAN GETS MY TRUCK
Decedent executed no formal will. When he died, he was survived by his sisters Sharon and Susan, his brothers Norman and Adam and his widow Marie, the defendant.
For several years before his death, decedent had been ill with kidney disease, diabetes and other medical problems. On September 11, 1995, Norman and Adam visited decedent. They discussed distribution of decedent's assets to his family. Norman and Adam maintain that decedent began writing on a sheet of paper and declared to his brothers that he was writing his will. Adam and Susan claim that on September 17, 1995, decedent handed the sheet of paper to Susan, told her it was his will and directed her to retain it. Susan contends that she noted the mistake in the year of the document's date and that she and decedent "joked about this obvious mistake."
Norman offers the writing for probate as a holographic will. He also contends that decedent and Marie had been separated when decedent died. Norman seeks to be appointed as administrator cum testamento annexo. Marie opposes the probate of the alleged holographic will. In the alternative, if the will is admitted *36 into probate, Marie requests recognition of her rights to an elective share of the estate pursuant to N.J.S.A. 3B:8-1 to -19 since she denies any marital separation.
Marie asserts that (a) the writing is not a holograph since it is hand printed and not in cursive; (b) the paper does not contain decedent's signature; and (c) the markings on the sheet of paper were not placed there by decedent.
Norman and Adam, on the one hand, and Marie, on the other, have submitted conflicting affidavits as to whether decedent and Marie were separated when decedent died.
N.J.S.A. 3B:3-3 provides:
A will which does not comply with N.J.S. 3B:3-2 is valid as a holographic will, whether or not witnessed, if the signature and material provisions are in the handwriting of the testator.
What is one's handwriting? Must it be in cursive or may it be hand printed?
At a minimum "handwriting" encompasses a person placing markings on paper or other writing surface using an implement which inscribes those markings in a manner unique to or characteristic of the writer. Other writing surfaces include cardboard, chalkboard and other objects capable of retaining markings for an extended period of time. The implement may be a pencil, In re Craddock's Estate, 179 Mont. 74, 586 P.2d 292 (1978); Appeal of Knox, 131 Pa. 220, 18 A. 1021 (1890), a felt-tip pen or an ink pen. Indeed, it may be any object that causes a lasting inscription, such as charcoal, a crayon or a lipstick. Different portions may be in different ink. In re Moody's Estate, 118 Cal. App.2d 300, 257 P.2d 709, 716 (1953). However, it cannot be a typewriter or other mechanism incapable of unique and individual inscription. Dean v. Dickey, 225 S.W.2d 999 (Tex.Civ.App. 1949); Scott v. Gastright, 305 Ky. 340, 204 S.W.2d 367, 173 A.L.R. 565, 567 (1947); In re Bauer's Estate, 5 Wash.2d 165, 105 P.2d 11 (1940); Wolf v. Gall, 176 Cal. 787, 169 P. 1017, 1019 (1917), as to a typewriter; In re Thorn's Estate, 183 Cal. 512, 192 P. 19 (1920), as to a rubber stamp; In re Johnson's Estate, 129 Ariz. 307, 630 P.2d 1039 *37 (Ct.App. 1981); In re Wolcott's Estate, 54 Utah 165, 180 P. 169, 4 A.L.R. 727 (1919), as to the filling in of blank spaces in preexisting printed matter.
Handwriting is required under the statute for three reasons. The first is to decrease the opportunity for fraud. Presumably, there will be sufficient other samples of a decedent's handwriting that a forged holographic will can be identified and rejected. Block printing is as amenable to that detection and analysis process as cursive writing. United States v. Mangan, 575 F.2d 32, 41-42 (2d Cir.1978), cert. denied, 439 U.S. 931, 99 S.Ct. 320, 58 L.Ed.2d 324 (1978); James V.P. Conway, The Identification of Handprinting, 45 Journal of Criminal Law, Criminology and Police Science 605 (1955).
The second reason is to ensure that a testator was aware that he or she was making, and intended to make, testamentary dispositions. In re Smith's Will, 108 N.J. 257, 262, 528 A.2d 918 (1987). Inherently the process of creating and executing a holographic will lacks the ceremony and third-party inquiry attendant to a formal will execution format. That format is designed to impress on a testator the momentous consequences he or she is generating. By actually having to write out the specifics of what is wanted, as opposed to the less arduous process of merely filling in some blank spaces on a preprinted form, we believe that the significance of what the testator is doing permeates his or her understanding.
The third reason why handwriting  as opposed to filling in blanks or checking off provisions on a preprinted form  is required by N.J.S.A. 3B:3-3 is to make more certain that the testator expressed only and exactly what he or she intended. We trust that the bother of having to write out the will's directives shall result in a reflection on and verbalization precisely reciting what the testator meant to occur.
None of these reasons for requiring handwriting is adversely implicated by the use of hand printing as distinguished from cursive. The authenticity of printing can be tested as can cursive *38 writing. It is evident that the use of printing or cursive equally address the goals of reassuring that the testator's state of mind was one of knowing what he or she was doing and of guaranteeing that the testator was expressing what he or she intended.
In Alexander's Estate v. Hatcher, 193 Miss. 369, 9 So.2d 791, 792 (1942), a hand printed holographic will was challenged. It was printed with a lead pencil. The claimed testator was able to write in cursive. The question was whether the decedent had written the proposed will. The decision was that he had not. That the will was printed, as opposed to cursively written, was not a prima facie basis for its rejection.
Accordingly, I conclude that the use of hand printing or block lettering not only satisfies the definition of handwriting but also is consistent with the goals of N.J.S.A. 3B:3-3 in requiring handwriting.
Must a signature be in cursive or may it also be printed? N.J.S.A. 3B:3-3 requires the signature on a holographic will to be in the testator's handwriting. As defined in Webster's New World Collegiate Dictionary 1079 (1973), a "signature" is the name of a person written with that person's own hand. Cf., Matthews v. Deane, 201 N.J. Super. 583, 584, 493 A.2d 632 (Ch.Div. 1984) (which approved printed signatures on a recall petition, but defined "signature" as "that which an individual intends to be his signature.") But see, In re Waldick Aero-Space Devices, Inc., 71 B.R. 932, 936 (D.N.J. 1987), which permitted a typewritten signature on a security agreement since it was consistent with existing commercial practices.
By definition a signature is not necessarily inscribed in cursive. It only must be the writer's name in the writer's handwriting. It need have no particular "cast or form." In re Hyland's Will, 27 N.Y.S. 961, 963 (Surrog.Ct. 1892). For the purpose of N.J.S.A. 3B:3-3 a signature may be in cursive or in block lettering, as long as it is the writer's name and in the writer's hand.
*39 Marie asserts that, since the claimed will does not contain the testator's signature at the end of the writing, it is invalid. However, if decedent printed his name at the beginning of the document and intended it to be his signature, it will suffice. In re Siegel's Estate, 214 N.J. Super. 586, 592, 520 A.2d 798 (App.Div. 1987). This, of course, assumes that the purported holographic will was written by decedent. This assumption is at issue because of the third of the widow's challenges to admitting the holographic will to probate.
Marie posits the unlikelihood that decedent wrote the claimed will. Her stance is based on more than mere conjecture. She claims that decedent always wrote in cursive when he wrote out something or signed his name. She has provided copies of numerous documents in support of this claim. Additionally, when signing his name, decedent invariably included his middle initial. The signature on the holographic will lacks any middle initial. The genuineness of the handwriting constituting a holographic will is a sine qua non for its admissibility into probate. A bona fide factual dispute exists as to that genuineness. I cannot now rule on the will's admission into probate. A resolution of that factual dispute and whether decedent and Marie were living separately from one another will be determined at a trial to be scheduled in the near future.
Finally, it is not fatal to the will's acceptance that the date on it is obviously incorrect. The general rule is that an error in the dating will not vitiate a holographic will. In re Moody's Estate, supra, 257 P.2d at 712; Love v. Dawkins, 222 La. 259, 62 So.2d 399, 401 (1952); In re Irvine's Estate, 114 Mont. 577, 139 P.2d 489, 147 A.L.R. 882 (1943). Here, the misstatement of the year will not nullify the will.