564 A.2d 990

**Frederick P. HESSENTHALER, F. Ernest McConnell, Ronald J. Cox, David P. Faucher, George R. Holl, and John L. Price, III, t/a Inven Associates**

v.

**Mehdi P. FARZIN and Marie R. Farzin, husband and wife, Appellants.**

Superior Court of Pennsylvania.

Argued June 13, 1989.

Filed Oct. 3, 1989.

Thomas Caldwell, Harrisburg, for appellants.

Robert F. Claraval, Harrisburg, for appellees.

Before BROSKY, BECK and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from an order and decree nisi directing appellants to specifically perform their obligations under a land sales agreement dated November 17, 1985, and ordering them to convey the property at issue to appellees. Appellants contend that the court erred in directing specific performance because: (1) the court erroneously relied on oral testimony when it held that a memorandum existed sufficient to satisfy the Statute of Frauds; and (2) the only writing signed by appellants does not include the material term of financing. For the reasons that follow, we disagree, and accordingly, affirm the order and decree nisi.

From November 17, 1985 to December 5, 1985, appellants engaged Thomas Dougherty and Barbara Mikulak as real estate agents to help them sell their property, located at 6175–6185 Hocker Drive, Harrisburg, Pennsylvania. Appellant Marie Farzin indicated to her agents that she would accept an offer that consisted of $520,000 as a purchase price with a $220,000 second mortgage. Pursuant to those instructions, appellants' agents met with appellees and drafted a sales agreement on November 17, 1985. The agreement was drafted exactly as appellant Marie Farzin instructed Thomas Dougherty to draft it. Appellees exe-

cuted the agreement of November 17, 1985, as prepared by appellants' agents. Thomas Dougherty told appellant Marie Farzin that if appellants wished to accept the offer of November 17, 1985 they were to send him a telegram confirming their acceptance. On November 19, 1985, appellant Marie Farzin sent Dougherty a mailgram confirming their acceptance. Dougherty then mailed the agreement of November 17, 1985 to appellants for signature. Appellants unilaterally attempted to add an additional term, collateral to the prior agreement. Appellees sued for specific performance of the November 17 agreement. Following a hearing on October 10, 1988, the court below held that a binding contract had been created, and by order dated December 8, 1988, directed appellants to specifically perform their obligations under the agreement, and convey the property to appellees. This appeal followed.

Appellant's first argument is that the trial court erred because it relied on oral testimony in determining that a memorandum existed sufficient to satisfy the Statute of Frauds (the "Statute"), 33 P.S. § 1 *et seq.* The Statute requires that agreements for the sale of land be signed and in writing.[1] This requirement can be met by creation of a

---

1. The Statute provides:

   From and after April 10, 1772, all leases, estates, interests of freehold or term of years, or any uncertain interest of, in, or out of any messuages, manors, lands, tenements or hereditaments, made or created by livery and seisin only, or by parol, and not put in writing, and signed by the parties so making or creating the same, or their agents, thereunto lawfully authorized by writing, shall have the force and effect of leases or estates at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater force or effect, any consideration for making any such parol leases or estates, or any former law or usage to the contrary notwithstanding; except, nevertheless, all leases not exceeding the term of three years from the making thereof; and moreover, that no leases, estates or interests, either of freehold or terms of years, or any uncertain interest, of, in, to or out of any messuages, manors, lands, tenements or hereditaments, shall, at any time after the said April 10, 1772, be assigned, granted or surrendered, unless it be by deed or note, in writing, signed by the party so assigning, granting or surrendering the same, or their agents, thereto lawfully authorized by writing, or by act and operation of law.
   33 P.S. § 1.

written memorandum that need not consist of one single document. *Target Sportswear v. Clearfield Found.*, 327 Pa.Super. 1, 10–11, 474 A.2d 1142, 1147–1148 (1984) *allocatur denied* (July 17, 1984). The *Target* court also quoted § 208 of the *Restatement of Contracts*, which sets forth the requirements for the validity of such a memorandum as follows:

> The memorandum may consist of several writings,
>
> (a) if each writing is signed by the party to be charged and the writings indicate that they relate to the same transaction, or
>
> (b) though only one writing is signed if
>
>> (i) the signed writing is physically annexed to the other writing by the party to be charged, or
>>
>> (ii) the signed writing refers to the unsigned writing, or
>>
>> (iii) it appears from examination of all the writings that the signed writing was signed with reference to the unsigned writings.

*Id.*, 327 Pa.Superior Ct. at 11, 474 A.2d at 1148 (quoting *Restatement of Contracts* § 208, at 283 (1932)). *Cf. Restatement (Second) of Contracts* § 132 (1981). The first question we must decide is whether or not the mailgram appellants sent to Dougherty constitutes a "signed" writing as contemplated by the Statute.[2] Neither our research nor that of the parties has revealed any Pennsylvania cases that address the issue of whether or not a mailgram can be sufficient to satisfy the Statute.[3] A consideration of the purpose served by the Statute, however, convinces us that the mailgram that was sent in this case is sufficient to constitute a signed writing.

The purpose of the Statute is to prevent the possibility of enforcing unfounded, fraudulent claims by requiring that contracts pertaining to interests in real estate be supported

**2.** It is not disputed that the mailgram is a writing for purposes of the Statute.

**3.** Although the issue is one of first impression in Pennsylvania, these types of questions are likely to arise with greater frequency in the future, as businesses and individuals increasingly rely on similar methods of negotiation such as electronic mail, telexes and facsimile machines in conducting their business affairs.

by written evidence signed by the party creating the interest. *Burns v. Baumgardner,* 303 Pa.Super. 85, 94, 449 A.2d 590, 594 (1982); *see also Target Sportswear v. Clearfield Found., supra.* Pennsylvania courts have emphasized that the Statute is *not* designed to prevent the performance or enforcement of oral contracts that in fact *were* made. *See Beeruk Estate,* 429 Pa. 415, 418–19, 241 A.2d 755, 758 (1968) (*quoting Corbin on Contracts* § 498, at 680–681 (1950)); *Axler v. First Newport Realty Investors,* 279 Pa. Super. 14, 17, 420 A.2d 720, 722 (1980). Therefore, the *Beeruk* Court noted,

> we should always be satisfied with 'some note or memorandum' that is adequate ... to convince the court that there is no serious possibility of consummating fraud by enforcement. When the mind of the court has reached such a conviction as that, it neither promotes justice nor lends respect to the statute to refuse enforcement because of informality in the memorandum or its incompleteness in detail.

*Beeruk Estate, supra* 429 Pa. at 425, 418–19, 241 A.2d 755 at 758 (*quoting Corbin on Contracts* § 498, at 680–81 (1950)); *see also Target Sportswear v. Clearfield Found., supra* 327 Pa.Super. at 13–14, 474 A.2d at 1148–1149; *Axler v. First Newport Realty, supra.*

■ Turning to the specific question before us, we should emphasize that there is no requirement in the Statute or the decisional law that a signature be in any *particular* form. Instead, the focus has been on whether there is some reliable indication that the person to be charged with performing under the writing intended to authenticate it. Thus, for example, the *Restatement (Second) of Contracts* provides that:

> The signature to a memorandum may be *any symbol made or adopted with an intention, actual or apparent, to authenticate the writing as that of the signer.*

*Id.* at § 134 (emphasis supplied); *see also Restatement of Contracts* § 210, at 287 (1932) ("The signature to a memorandum under the Statute may be written or printed and

need not be subscribed at the foot of the memorandum, but must be made or adopted with the declared or apparent intent of authenticating the memorandum as that of the signer."). Similarly, the courts have refused to require a specific form of signature, so long as there is some indication that the "signer" intended to authenticate the memorandum. *See, e.g., Denunzio Fruit Co. v. Crane,* 79 F.Supp. 117 (S.D.Cal.1948), *aff'd* 188 F.2d 569 (9th Cir.1951), *cert. denied* 342 U.S. 820, 72 S.Ct. 37, 96 L.Ed. 620 (1951) (where agent agreed to sale by teletype, writing bearing mark of agent satisfied Statute); *Smith v. Ostly,* 53 Cal.2d 262, 1 Cal.Rptr. 340, 347 P.2d 684 (1959) (printed name ordinarily may be adopted as signature, and need not necessarily appear at end of document); *Irving v. Goodimate Co.,* 320 Mass. 454, 70 N.E.2d 414 (1946) (memorandum is sufficient under Statute if signed by person to be charged by printed, stamped or typewritten signature, and if in signing he intended to authenticate paper as his act); *Radke v. Brenon,* 271 Minn. 35, 134 N.W.2d 887 (1965) (action for specific performance of alleged oral contract; *held:* written memorandum containing parties' names, map of land and terms of offer satisfied Statute); *Hansen v. Hill,* 215 Neb. 573, 340 N.W.2d 8 (1983) (typewritten signature may satisfy Statute if signer's intent to authenticate memorandum is shown); *Frohn v. Central Trust Co.,* 72 N.E.2d 303 (Ohio, 1946) (for purposes of Statute, instrument may be validated by party in any manner which indicates intention to be bound thereby, and may be signed with typewriter if intention is to sign it); *Matthews v. Deane,* 201 N.J.Super. 583, 493 A.2d 632 (Ch.Div.1984) (although Statute does not define "signature," signature is that which party intends to be his signature); *Weber v. DeCecco,* 1 N.J.Super. 353, 356, 61 A.2d 651, 653 (Ch.Div.1948) ("typewritten or printed names, signatures in ink or pencil, or any name or symbol used by a party with the intention of constituting it his signature, is sufficient to comply with the statutory requirements.") (citations omitted). We agree with these authorities that the proper, realistic approach in

these cases is to look to the *reliability* of the memorandum, rather than to insist on a formal signature.

Applying these principles to the case at bar, it is clear that the mailgram sent by appellants constitutes a signed writing. The mailgram states, in its entirety: "We, Dr. Mehdi and Marie Farzin, accept the offer of $520,000 for our property at 6175 and 6185 Hocker Drive Harrisburg, Pennsylvania." The detail contained in this mailgram is such that there can be little question of its reliability. Appellants were careful to begin the mailgram by identifying themselves. They then made certain that their intention would be properly understood by declaring their acceptance, and identifying both the property and the consideration involved. In light of the primary declaration of identity, combined with the inclusion of the precise terms of the agreement, we are satisfied that the mailgram sufficiently reveals appellants' intention to adopt the writing as their own, and thus is sufficient to constitute a "signed" writing for purposes of the Statute. Moreover, this result is consistent with the holdings of courts in other jurisdictions that have addressed the question of whether or not a telegram can be a signed writing for purposes of the Statute. *See Hillstrom v. Gosnay*, 188 Mont. 388, 614 P.2d 466 (1980) (typewritten name of seller on telegram accepting offer to buy property was sufficient signature to satisfy Statute); *Yaggy v. B.V.D. Co.*, 7 N.C.App. 590, 173 S.E.2d 496 (1970) (printing of defendant's name on telegram accepting offer to purchase property was sufficient to satisfy Statute).[4]

The next question we must decide is whether or not the mailgram was signed with reference to the unsigned writ-

---

**4.** We find further support for our conclusion in Professor Corbin's treatise on Contracts. Corbin writes:

If the name is written or printed in the body of the document as part of the recital identifying the contracting parties, it is held not to be a signature in the absence of other evidence of intention. But, *if the document begins "I, James Crockford, agree . . .," the name may be taken to be a sufficient signature without other evidence.*

*Corbin on Contracts*, Vol. 2, Section 521 (emphasis added). We note that the language of appellants' mailgram almost exactly parallels the language Corbin approved in his treatise.

ing in question, i.e., the sales agreement of November 17, 1985. Appellants argue that the court's finding that the mailgram was signed with reference to the unsigned agreement of November 17, 1985, was improperly based on oral evidence. Absent an error of law or an abuse of discretion, this court is bound by the trial court's findings of fact. *Ecksel v. Orleans Const. Co.*, 360 Pa.Super. 119, 133, 519 A.2d 1021, 1028 (1987). Upon review of the record we are satisfied that there is sufficient evidence to support such a finding without relying on the oral testimony presented. A comparison of the memo and the sales agreement leaves little question that the "signed" mailgram was written with reference to the unsigned November 17 sale agreement. The agreement, like the memo, identifies Dr. Mehdi and Marie Farzin as the sellers, lists the address of the property as 6175–6185 Hocker Drive and sets the purchase price at $520,000. We note that the November 17 agreement included supplemental terms as well, such as the type of financing to be used in the deal, provisions regarding the zoning of the property, the duration of the mortgage, and the condition of the water and sewer and municipal improvements. Because the record evidence supports the court's conclusion that the mailgram was signed in reference to the agreement of November 17, the requirements of the Restatement of Contracts § 208(b)(iii) are met and the writings are a sufficient written memorandum for purposes of the Statute.

Appellants next contend that the only writing they signed did not include the material term of financing, and because of that fact, it does not satisfy the Statute. We disagree. A writing required by the Statute of Frauds need only include an adequate description of the property, a recital of the consideration and the signature of the party to be charged. *American Leasing v. Morrison Company*, 308 Pa.Super. 318, 454 A.2d 555 (1981). Here, the mailgram contained the address of the property, the price of the property and the Farzins' signatures. Moreover, the financing terms appellants claim they did not agree to are included in the November 17 agreement, which we have

concluded appellants accepted by their mailgram. Accordingly, we find that there is sufficient evidence to support the court's determination that appellants agreed to those terms.[5]

For the above-stated reasons, we conclude that appellants' claims that there was no memorandum sufficient to satisfy the Statute of Frauds and that the writing signed by them did not include a material term are meritless. Accordingly, we affirm the order and decree nisi.

Order and Decree affirmed.

---

5. Appellants also contend that there was no memorandum sufficient to satisfy the Statute because the real estate agent who listed the property read the offer to appellants and then delivered appellants' mailgram to appellees. Because we have found that a memorandum exists for purposes of the Statute, this argument must fail.