

*Christopher J. Klein,* for plaintiff.
*D. Keith Melenyzer,* for defendant.

GILMORE, *J.,* May 9, 1995—This matter is before the court on plaintiff's motion for post-trial relief. At the close of plaintiff's case, upon defendant's motion, the trial judge determined that there was no justiciable

issue for the jury to decide and entered a nonsuit against plaintiff.

Plaintiff, a member of the Florida Bar, claimed that defendant orally promised to pay the pre-existing $50,000 retainer owed to plaintiff by a third party, James D. Ashley Sr. The retainer was to cover all requisite work on numerous criminal charges then pending in Florida, as well as attempting to secure Ashley's release from prison.

These facts, however, are contradicted by the undated fee agreement between the plaintiff and Ashley which was attached to plaintiff's amended complaint. The agreement, signed by Ashley and the plaintiff, specified that Ashley is both retaining the plaintiff's services and responsible for prompt payment. No mention is made of the defendant's surrogacy.

Further corroboration of defendant's position and additional refutation of plaintiff's is provided via the November 5, 1981, mailgram attached as part of plaintiff's complaint and amended complaint. The mailgram, sent from defendant to plaintiff, elaborates that defendant pledged several lots of real property situated in Pennsylvania as collateral for plaintiff's fee. From the mailgram it is readily apparent that defendant understood that the fee was owed by Ashley and was to be paid by him and the pledge of realty was solely one of security for plaintiff. This was most likely done in order that plaintiff might proceed with his representation without the fee being immediately available.

The written contract, in tandem with the mailgram, as well as a thorough review of the pleadings and trial transcript leads this court to conclude that the trial court was correct and acted properly in granting a compulsory nonsuit.

As it was raised by both parties' briefs the court need necessarily allay any claims regarding the want and or failure of consideration issue. Defendant proffers the argument that plaintiff failed to show any benefit or consideration received by defendant in return for services rendered by plaintiff. Such is simply untenable and is handily refuted via a perusal of the trial transcript. Defendant wished to obtain Ashley's release from prison in order that Ashley might help to raise funds and thus reinvigorate defendant's investment. (Trial Tr. 17.)

The benefit of the potential freedom of Ashley to be gained through plaintiff's labors is clearly consideration in the nature of a bargained for exchange. *Greene v. Oliver Realty Inc,* 363 Pa. Super. 534, 526 A.2d 1192 (1987), *alloc. denied,* 517 Pa. 607, 536 A.2d 1331 (1987). Such a quid pro quo of a personal nature is sufficient to constitute consideration.

Lastly, the court will not ordinarily inquire into the adequacy of consideration. *Thomas v. Thomas Flexible Coupling Co.,* 353 Pa. 591, 46 A.2d 212 (1946).

Consideration is unquestionably present. However, such does not make defendant personally liable for Ashley's debt. The instant case must necessarily rise or fall on the disputed written material.

The gravamen of the instant case is the aforementioned telegram. The pertinent typewritten portions are:

"This is to confirm that I, Henry Motycki, will let Mr. Scott Lang (sic) Esq. hold the deeds to five lots situate in Rodgers Manor, Charleroi, Pennsylvania as collateral for his fee of $50,000 owed to him by Mr. James Ashley. He must go on record on Palm Beach appeal and orders (sic) all transcripts immediately for Mr. Ashley.

The numbers of the lots are situated in block number two on Park Road being lots number three through and including number seven. When fee is paid by Ashley deed to be returned to present owner—Henry Motycki."

The principle controlling the instant case is the venerable statute of frauds, more specifically the suretyship proviso found at 33 P.S. §3. The requisite statutory language is:

"No action shall be brought . . . to charge the defendant, upon any special promise, to answer for the debt or default of another, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him authorized."

The above portion of the statute of frauds, standing alone, offers no guidance as to what substantively comprises a requisite writing. However, the Pennsylvania Supreme Court has decreed in *Beeruk Estate,* 429 Pa. 415, 419, 241 A.2d 755, 758 (1968), that a memorandum is sufficient when it contains "(1) a sufficient statement of the *terms* of the agreement, . . . and (2) the signature of . . . the party against whom enforcement is sought . . . ." (emphasis in original) (citations omitted)

While the *Beeruk* court's decision addresses that portion of the statute concerning realty, 33 P.S. §1, rather than suretyship promises we discern no appreciable difference between the two, at least regarding the requirements of written memoranda.

The signature requirement need be addressed first as if it is not defendant's "signature" on the mailgram and thus not his pledge any further discussion is without meaning. There is no mandated form for a signature recited

in either the statute or Pennsylvania case law. *Hessenthaler v. Farzin,* 388 Pa. Super. 37, 564 A.2d 990 (1989). The *Hessenthaler* court conclusively stated that a mailgram can be considered to have met the signed writing requirement. *Id.* This decision places Pennsylvania squarely in accord with numerous other jurisdictions. See *Id.* at 44, 564 A.2d at 993-94.

The primary focus has been on "whether there is some reliable indication that the person to be charged with performing under the writing intended to authenticate it." *Id.* at 42, 564 A.2d at 993. In the instant case the detailed information contained in the mailgram resolves any questions of authenticity. The mailgram was sent from Charleroi, where defendant resides. This alone is hardly significant but when supplemented with the additional indicia provided, *i.e.,* the number and location of the lots of defendant's realty indicates a rather intimate knowledge of defendant's holdings. Additional corroboration that the mailgram is from defendant is provided via the specificity of the details of the telephone conversation between plaintiff and defendant contained in the mailgram. (Trial Tr. 15.) Taking into account the knowledge of defendant's realty in tandem with the recitation of the minutiae of the litigants' telephone conversation leads this court to find that the mailgram was sent by defendant to plaintiff.

Having established the valid "signature" of defendant this court need necessarily address whether the terms of the agreement are sufficient to bind defendant. The terms of the mailgram pertinent to this issue are:

"This is to confirm that I, Henry Motycki, will let Mr. Scott Lang (sic), Esq. hold the deeds to five lots . . . as collateral for his $50,000 fee owed to him by

Mr. James Ashley . . . When fee is paid by Ashley deed to be returned to present owner."

The underlying principle which is determinative of whether the above is sufficient to hold defendant personally liable for Ashley's pre-existing debt was elucidated by the Pennsylvania Superior Court in *Little Manufacturing Co. v. Lipschutz,* 87 Pa. Super. 102, 106 (1925): "[w]henever a plaintiff seeks to make one liable for the debt of another, the case must be clearly proved and every ambiguity in the evidence weighs in favor of the defendant."

In the case at bar plaintiff has not met the requisite burden necessary in order to overcome the statute. The writing, *i.e.,* mailgram, sent by defendant is ambiguous as to suretyship and contains no language referencing defendant's promise to pay the debt of a third party. The mailgram contains no indicia that defendant ever agreed to be personally liable for a $50,000 money judgment plus expenses. The only certainty the mailgram does provide is that certain realty will be offered as collateral. Additionally, the mailgram clearly reaffirms Ashley's responsibility for his debt to the plaintiff. What is vital and is wholly absent is an essential term in which defendant agrees to be bound and thus promises to answer personally for Ashley's debt. Although no talismanic language is demanded, a writing to be sufficiently descriptive must indicate a basic promise to pay by the party to be charged.

Such is simply not found in the state of affairs of this case. Though plaintiff and defendant may well have had conversations in which defendant agreed to stand in Ashley's shoes for plaintiff's fees (Trial Tr. 43) this alleged agreement was never reduced to writing and signed by defendant. (Trial Tr. 44.) Thus, support for defendant's

position is provided by plaintiff's own testimony. This court does not doubt plaintiff's veracity but only his ability to substantiate his claim.

As defendant never, in writing, agreed to be personally liable for plaintiff's $50,000 money judgment the definiteness of the terms required by the statute of frauds suretyship requirement has been violated and defendant cannot be held bound.

Plaintiff ably attempts to evade the bar on oral suretyship promises via the "leading object" rule. This judicially created exception to the statute provides that an oral guaranty is enforceable if the primary purpose "of the promisor is to serve his own pecuniary or business purpose." *Biller v. Ziegler,* 406 Pa. Super. 1, 8, 593 A.2d 436, 440 (1991). Even were the agreement expressed "in the form of a provision to pay the debt of another" if the cardinal import is the advancement of the promisor's own fiduciary or business purpose the promise need not be manifested by an accompanying writing. *Id.* As the promise capitally advances the surety-promisor's own agenda, "the gratuitous or sentimental element often present in suretyship is . . . " removed. *Thomas A. Armbruster Inc. v. Barron,* 341 Pa. Super. 409, 413, 491 A.2d 882, 884 (1985). Placing the promissory transaction within the ambit of commercial decision-making lessens the necessity for the observance of the ordinary evidentiary or cautionary formalities. *Id.*

Plaintiff avers that defendant desired Ashley's release from confinement in order that Ashley might raise funds for an ongoing coal concern. (Trial Tr. 17.) Without Ashley's participation in revenue raising defendant's substantial monetary investment could have potentially been lost. *Id.* However, the above was defendant's secondary

purpose. The principal object of defendant was to advantage Ashley and not himself. From a review of the pleadings and trial transcript it is apparent that while defendant's acts could potentially have had great benefit to himself such was incidental to the paramount concern of obtaining Ashley's release from prison in order that Ashley might properly prepare his defense.

Plaintiff testified as to the quandary Ashley was in. (Trial Tr. 15-16.) He could not access his alleged substantial pecuniary assets unless he was no longer in prison. But in order to garner his freedom he needed money to pay an attorney to fashion his release. Such release would only be accomplished via competent, experienced legal representation. Defendant merely provided the vehicle for his friend/acquaintance to get out of prison. By offering his realty as collateral, defendant merely permitted plaintiff to begin his representation without the necessary money being immediately available.

## ORDER

And now, May 9, 1995, as the trial judge was correct in granting a compulsory nonsuit, plaintiff's motion for post-trial relief is denied.