

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-29-1997

# Flight Sys Inc v. Elec Data Sys Corp

Precedential or Non-Precedential:

Docket 96-7351

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Flight Sys Inc v. Elec Data Sys Corp" (1997). *1997 Decisions.* Paper 93.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/93

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 29, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-7351

FLIGHT SYSTEMS, INC.,

  Appellant

v.

ELECTRONIC DATA SYSTEMS CORPORATION,

   Appellee

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 95-01724)
District Judge: Hon. Sylvia H. Rambo

Argued Wednesday, January 22, 1997

Before: NYGAARD and LEWIS, Circuit Judges,
and SCHWARZER, District Judge*

(Opinion filed April 29, 1997)

_____

*The Honorable William W. Schwarzer, Senior Judge of the United States
District Court for the Northern District of California, sitting by
designation.

Steven E. Grubb, Esq. (Argued)
Goldberg, Katzman & Shipman
320E Market St.
P.O. Box 1268, Strawberry Square
Harrisburg, Pa. 17108

Counsel for Appellant

Diana S. Donaldson, Esq.
Paul G. Gagne, Esq. (Argued)
Schnader, Harrison, Segal & Lewis
1600 Market St., Suite 3600
Philadelphia, Pa. 19103

Counsel for Appellee

OPINION OF THE COURT

NYGAARD, Circuit Judge.

Flight Systems, Inc. appeals an order by the district court adopting the report and recommendation of a magistrate judge and dismissing Flight Systems' suit under Fed. R. Civ. P. 12(b)(6). We will vacate the order and remand for further proceedings consistent with this opinion.

I. FACTUAL AND PROCEDURAL BACKGROUND

This diversity case arises from a contract dispute governed by the laws of Pennsylvania. Because it comes to us after dismissal under Rule 12(b)(6), the facts are presented as alleged by Flight Systems.

In April 1995, Electronic Data Systems ("EDS"), a Texas corporation, contacted Flight Systems, a Pennsylvania corporation, through a broker about renting space in an office building at 505 Fishing Creek Road in Lewisberry, Pennsylvania. Flight Systems was amenable, and the broker sent Flight Systems a letter dated April 20, 1995 outlining the terms of the five-year lease EDS desired. On the same day, Flight Systems removed the property from the rental market.

Intensive negotiations followed, culminating in a 59-page blackline draft lease agreement. On June 28, 1995, Ronald Katzman, the attorney representing Flight Systems, received a memorandum from Donna Merriman, an EDS employee who, Flight Systems alleges, was fully authorized to bind EDS to the terms of the lease. Merriman stated that if one final modification, which she attached, was agreeable, Katzman should contact Barbara Stone of EDS and the lease agreement would be prepared for execution. Katzman approved the proposed modification and conveyed his acceptance of the lease to Stone the same day. Flight Systems contends that a contract was formed at this point.

When Katzman spoke to Stone on June 28, 1995, she told him that the lease agreement would be executed immediately by EDS, and then forwarded by overnight delivery to him for signature by Flight Systems' representatives. Instead, the next day Flight Systems president Robert Shaffner received a telephone message that EDS no longer wished to lease the property at 505 Fishing Creek Road. Katzman tried to find out what had happened, but received no answer until August 15, 1995, when EDS' attorney informed Flight Systems that EDS' acceptance of the lease agreement had been contingent on procuring additional business in the Harrisburg area. Since EDS had not succeeded, it did not need more office space. Flight Systems says that it had never been told of this contingency.

Flight Systems sued EDS in the Pennsylvania Court of Common Pleas, alleging breach of contract and breach of obligation to negotiate in good faith. EDS removed the case to the United States District Court. EDS then made a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim upon which relief may be granted. A magistrate judge recommended that the court grant EDS' motion, and the district court issued an order dismissing the complaint.

II. BREACH OF CONTRACT

The district court found that Flight Systems could not prevail on its breach of contract claim because it had not

alleged the existence of a signed writing that would satisfy Pennsylvania's statute of frauds governing real property leased for more than three years, 68 Pa. Stat. Ann. S 250.202, although it alleged the existence of a five-year lease. We disagree.

On a Rule 12(b)(6) motion, an affirmative defense, such as the statute of frauds defense raised by EDS, is appropriately considered only if it presents an insuperable barrier to recovery by the plaintiff. See Continental Collieries v. Shober, 130 F.2d 631, 635-36 (3d Cir. 1942) (holding that affirmative defenses may be raised on a 12(b)(6) motion "where the defect appears on the face of the pleading"). Applying similar reasoning, the Pennsylvania courts have concluded that a waivable statute of frauds defense may serve as a basis for judgment on the pleadings only when trial would be a "fruitless exercise" because the plaintiff fails to allege facts in his pleadings that take an oral contract outside the statutory prohibition. Keil v. Good, 356 A.2d 768, 771 (Pa. 1976).

Allowing this matter to proceed would not be a fruitless exercise. Under Pennsylvania law, a lease of real property for a term of more than three years must be made in writing and signed by the parties creating the lease. 68 Pa. Stat. Ann. S 250.202. However, this statute of frauds is a waivable defense. Blumer v. Dorfman, 289 A.2d 463, 468 (Pa. 1972). Consequently, it will not bar recovery if EDS fails to raise the defense in its answer, or admits to the existence of a contract in pleadings or testimony. Zlotziver v. Zlotziver, 49 A.2d 779, 781 (Pa. 1946); Target Sportswear, Inc. v. Clearfield Foundation, 474 A.2d 1142, 1150 (Pa. Super. Ct. 1984) (citing cases). Pennsylvania courts have declared that the purpose of the statute of frauds is to shield persons with interests in land from being deprived of those interests by perjury, not to arm contracting parties with a sword they may use to escape bargains they rue. Fannin v. Cratty, 480 A.2d 1056, 1059 (Pa. Super. Ct. 1984) (citing Zlotziver, 49 A.2d at 781 and Gerlock v. Gabel, 112 A.2d 78, 81 (Pa. 1955)); accord Sferra v. Urling, 195 A. 422, 426 (Pa. 1937); Axler v. First Newport Realty Investors, 420 A.2d 720, 722 (Pa. Super. Ct. 1980) (citing In re Estate of Beeruk, 241 A.2d 755, 758 (Pa. 1968)). If the defendant

4

admits under oath that a contract was formed, the purposes of the statute of frauds are served, Zlotziver, 49 A.2d at 781, and the contract will be afforded full legal effect, Sferra v. Urling, 195 A. at 425. Allowing EDS to dispose of the breach of contract claim before it has even submitted an answer would enable EDS to use the statute of frauds as a sword, in contravention of the statute's purpose. Cf. ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 862–63 (3d Cir. 1994) (finding dismissal on a 12(b)(6) motion improper where applicable New Jersey statute of frauds contained an exception for admissions).

Moreover, should EDS raise the statute of frauds as an affirmative defense in its answer, Flight Systems may be able to produce writings that satisfy the statute of frauds. To ensure that the statute of frauds is not used as a sword to perpetrate fraud, the Pennsylvania Supreme Court has stressed that adjudicators should "always be satisfied with `some note or memorandum' that is adequate . . . to convince the court that there is no serious possibility of consummating fraud by enforcement." In re Estate of Beeruk, 241 A.2d at 758 (quoting 2 Corbin on Contracts S 498 (1950)). As for lease agreements, "no particular form of words is necessary to constitute a lease and . . . any writing is sufficient which establishes the intention of one party voluntarily to dispossess himself of the premises, for a consideration, and of the other to assume the possession for a prescribed period." Morrisville Shopping Center v. Sun Ray Drug Co., 112 A.2d 183, 186 (Pa. 1955) (citations omitted). The writing need not be titled a "lease." Id. at 187. Furthermore, the statute of frauds can be satisfied by several writings if at least one writing is signed by the party to be charged and refers to the unsigned writing or it appears from examination of all the writings that the signed writing was signed with reference to the unsigned writings. See Target Sportswear, 474 A.2d at 1147 (citing Fleming v. Strayer, 63 A.2d 122, 124 (Pa. Super. Ct. 1949)).1 Because

_____

1. In full, Fleming states, "The general requisites of a memorandum are listed in Restatement, Contracts, S 207, and the rule governing the sufficiency of separate writings to constitute a memorandum is set forth in S 208:

5

the statute of frauds pertaining to leases, 68 Pa. Stat. Ann. S 250.202, requires that a lease be signed by both the landlord and tenant, Flight Systems must produce writings signed by both parties, see Flomar Corp. v. Logue, 210 A.2d 254, 255 (Pa. 1965), although both signatures need not appear on the same writing. Where the writings produced consist of an offer and acceptance, both writings must pertain to the same terms without modification. Target Sportswear, 474 A.2d at 1149-50 (quoting 37 C.J.S. Statute of Frauds S 180(c)).

In a footnote, the district court rejected Flight Systems' contention that the June 28, 1995 memorandum from Donna Merriman of EDS, referring to and annexing a proposed final modification to the draft lease agreement, constituted a signed writing. We agree with the district court that this writing alone would not satisfy the statute of frauds, since S 250.202 requires the signatures of both parties to a lease agreement for more than three years. Flomar, 210 A.2d at 255. However, we do not agree that the memorandum could not satisfy the statute of frauds requirement of a "signed" writing if Flight Systems also produced writings it signed which pertain to the same terms, Target Sportswear, 474 A.2d at 1149-50, and sufficiently state those terms, In re Estate of Beeruk, 241 A.2d at 758. Any mark or symbol -- including a typewritten name -- will be deemed to constitute a signature for the purposes of the statute if it is used with the declared or

_____

`The memorandum may consist of several writings,

  (a) if each writing is signed by the party to be charged and the writings indicate that they relate to the same transaction, or

  (b) though one writing only is signed if

  (i) the signed writing is physically annexed to the other writing by
  the party to be charged, or

  (ii) the signed writing refers to the unsigned writing, or

  (iii) it appears from examination of all the writings that the signed writing was signed with reference to the unsigned writings.'
"

63 A.2d at 124.

apparent intent to authenticate the memorandum. Hessenthaler v. Farzin, 564 A.2d 990, 993 (Pa. Super. Ct. 1989) (finding mailgram which stated, "We, Dr. Mehdi and Marie Farzin, accept the offer of $520,000 for our property at 6175 and 6185 Hocker Drive Harrisburg, Pennsylvania," was sufficiently reliable to constitute a "signed" writing) (surveying case law). As the Hessenthaler court noted, "the proper, realistic approach . . . is to look to the reliability of the memorandum, rather than to insist on a formal signature." Id. In this instance, Donna Merriman's typewritten name has been initialed and is part of a facsimile transmission made on the stationery of EDS' legal affairs department. Moreover, the memorandum on which Merriman's name and initial appear refers specifically to the "proposed Lease w/Flight Systems, Inc. at 505 Fishing Creek Road, Lewisberry, PA." Cf. id. at 994 (finding the inclusion of the precise terms of the sales agreement, together with the sellers' names, sufficiently revealed the seller's intention to adopt the writing as their own). These factors lend reliability to the memorandum, and it may, therefore, satisfy the statute of frauds when considered in conjunction with other documents.

Finally, even if Flight Systems ultimately fails to obtain an admission that a contract was formed, and fails to produce signed writings that satisfy the statute of frauds, Flight Systems has nevertheless sufficiently alleged the existence of an oral contract, precluding dismissal of its complaint. The statute of frauds does not void contracts relating to land that fail to comply with its requirements; it only renders unenforceable the durational term of those contracts. See Ferri v. Liberatoscioli, 13 A.2d 45, 45-46 (Pa. 1940). Flight Systems may recover for breach of an oral lease, although the damages available are limited. If Flight Systems satisfies the statute of frauds, either by producing signed writings or by obtaining an admission from EDS that a five-year lease was formed, specific performance may be awarded. See Sferra, 195 A. at 425. If, on the other hand, Flight Systems only succeeds in proving the existence of an oral lease agreement, Flight Systems cannot recover the loss of its bargain unless the contract was induced by fraud, Fannin, 480 A.2d at 1060 (citing Seidlek

v. Bradley, 142 A. 914, 915 (Pa. 1928)).2 It may, however, recover any consideration paid to EDS and expenses incurred on the faith of the contract. Fannin, 480 A.2d at 1060–61 (citing Polka v. May, 118 A.2d 154, 156 (Pa. 1955)); see also Seidlek, 142 A. at 915 (noting the availability of nominal damages, at a minimum).

In its complaint, Flight Systems alleged that an oral contract was formed on June 28, 1995 when Donna Merriman of EDS forwarded the final lease modification to Ronald Katzman, Flight Systems' attorney, and Katzman approved the change and conveyed Flight Systems' acceptance to EDS. Thus, offer and acceptance are alleged. The fact that the parties intended subsequently to execute a signed writing does not preclude a finding that a contract was formed: if the minds of the parties met and the essential provisions of the contract were agreed upon, the contract was created, and the later writing is simply evidence of the agreement. Nakles v. Union Real Estate Co., 204 A.2d 50, 51 (Pa. 1964);3 Taylor v. Stanley Co., 158 A. 157, 159 (Pa. 1932); see also Goldman v. McShain, 247 A.2d 455, 458–59 (Pa. 1968) (vacating judgment on the pleadings where defendant had not signed lengthy lease document since plaintiff alleged that the parties had reached agreement and the document was merely a formalization); Frankel v. Northeast Land Co., 570 A.2d 1065, 1068 (Pa. Super. Ct. 1990) (finding demurrer

_____

2. If EDS were found to have terminated an at-will tenancy without proper notice, Flight Systems could recover rent for the notice period. See Fife v. Great Atlantic & Pacific Tea Co., 70 A.2d 369, 371 (Pa. Super. Ct. 1950).

3. The Nakles case is especially pertinent here, since it presents similar facts. The plaintiffs sought to lease space for a business. Id. at 50–51. After some negotiation with the landlord, a rent was agreed upon, the parties shook hands, and the landlord accepted a check for the first month's rent. Id. at 51. That day, the landlord sent the plaintiffs a lease agreement, which they signed and returned. Id. The landlord did not sign the lease, and later informed the plaintiffs that the space had been rented to someone else. Id. The court held that an oral contract had been formed on the day the rent was agreed upon, the parties shook hands and the landlord accepted the check; the written lease was a mere formality. Id. At the very least, the court concluded, a tenancy at will was created and plaintiffs had a valid cause of action. Id. at 51–52.

8

inappropriate where purchasers had signed sales agreement, but realtors had only signed an addendum; the trial court was required to accept the averments of the complaint that the realtors had entered into a sales agreement). Of course, EDS may dispute the contentions that an agreement was reached, or that Merriman or Katzman were authorized to bind the parties; but that would raise an issue of fact for determination at trial.

In summary, the statute of frauds does not clearly prevent recovery at this preliminary stage of the proceedings, and dismissal under Rule 12(b)(6) was inappropriate.

III. BREACH OF DUTY TO NEGOTIATE IN GOOD FAITH

Flight Systems alleges that EDS breached its duty to negotiate the lease agreement in good faith because it concealed the fact that its willingness to enter into the lease agreement was contingent on finding additional business in the Harrisburg area. The district court dismissed this claim, finding that Flight Systems had failed to allege any facts suggesting the existence of an agreement to negotiate in good faith. Again, we disagree.

The Pennsylvania Supreme Court has not decided whether a cause of action for breach of a duty to negotiate in good faith exists in the Commonwealth. See Channel Home Centers v. Grossman, 795 F.2d 291, 299 (3d Cir. 1986); Jenkins v. County of Schuylkill, 658 A.2d 380, 385 (Pa. Super. Ct.), alloc. denied, 666 A.2d 1056 (Pa. 1995). However, we predicted in Channel Home Centers that Pennsylvania would recognize such a cause of action. 795 F.2d at 299.

An agreement to negotiate in good faith is a contract. Id. at 298-99. Therefore, the plaintiff states a cause of action for breach of this duty when he alleges facts which, if proven, demonstrate that (1) both parties manifested an intention to be bound by an agreement to negotiate in good faith; (2) the terms of the agreement were sufficiently definite to be enforced; (3) consideration was conferred, id. at 299, and (4) the agreement was breached by bad faith conduct.

9

We conclude that Flight Systems has alleged sufficient facts to survive the motion to dismiss. Flight Systems contends that it agreed to remove the property at 505 Fishing Creek Road from the rental market while negotiating a lease agreement with EDS according to explicit terms set forth in the letter dated April 20, 1995 from EDS' broker, on the understanding that a final agreement would be reached by July 1, 1995. Thus, Flight Systems has alleged it agreed to negotiate a lease for a specific property on specific terms within a specific time, and it conferred consideration on EDS by removing the property from the market for the duration of that period. Flight Systems argues that EDS manifested its intention to be bound by establishing terms for a lease in the April 20, 1995 letter and engaging in intensive negotiations in the following two months to finalize the lease agreement. A promise by EDS to conclude negotiations by July 1, 1995 could constitute consideration, since it conferred a benefit on Flight Systems by limiting the time the company was obliged to keep the property off the rental market. Finally, Flight Systems alleges that EDS acted in bad faith by concealing from Flight Systems that it did not intend to execute the lease if it could not obtain additional business in the Harrisburg area. These allegations are sufficient to state a cause of action.

EDS counters Flight Systems' argument by pointing out that the April 20, 1995 letter includes the caveat, "This is strictly an outline and is contingent upon EDS internal approval and a mutually executed lease document." This evidence merely raises an issue of material fact; it does not preclude the claim since Flight Systems relies not only on this letter but on EDS' course of conduct to argue that EDS agreed to negotiate in good faith.4 See American Leasing v. Morrison Co., 454 A.2d 555, 560 (Pa. Super. Ct. 1982) (noting that the actions of parties are significant and substantial evidence in determining whether they intended

_____

4. Thus, Flight Systems' complaint differs from the dismissed complaint at issue in Philmar Mid-Atlantic v. York St. Assoc., 566 A.2d 1253, 1255 (Pa. Super. Ct. 1989), where the plaintiff relied solely on a letter of intent
containing a similar caveat, which negated the inference that both parties had manifested assent to be bound.

to be bound by an agreement) (citing Fenestra, Inc. v. John-McShain, Inc., 248 A.2d 838 (Pa. 1969) and Atlantic Richfield Co. v. Razumic, 390 A.2d 736 (Pa. 1978)). Moreover, a trier of fact might find that the caveat was intended to ensure that the April 20, 1995 letter would not be construed as a lease, while still demonstrating that EDS intended to oblige itself to negotiate in good faith. As we noted in Channel Home Centers, 795 F.2d at 298, a lease and an obligation to negotiate in good faith are separate and distinct contracts; Flight Systems is alleging the April 20, 1995 letter evinces the latter, not the former.

IV. CONCLUSION

For the foregoing reasons, we will vacate the order of the district court and remand for further proceedings consistent with this opinion.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

11