J-A03012-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| JEANNE R. HEYMANN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| ANDY L. MILLER AND IDA A. MILLER AND DAVID M. DECRISTO AND AMY DECRISTO; RANDY L. CASTLE AND DARLENE J. CASTLE | |
| APPEAL OF: DAVID M. DECRISTO AND AMY DECRISTO; RANDY L. CASTLE AND DARLENE J. CASTLE | No. 95 MDA 2014 |

Appeal from the Order Entered December 17, 2013
In the Court of Common Pleas of Bradford County
Civil Division at No(s): 08 EQ 000659

BEFORE:  MUNDY, J., STABILE, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:            **FILED NOVEMBER 18, 2015**

Appellants, Andy L. Miller, Ida A. Miller (collectively, the Millers),[1]

David M. DeCristo, Amy DeCristo, Randy L. Castle, and Darlene J. Castle

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Appellants Andy and Ida Miller did not file a brief in this matter.  Instead, on August 25, 2014, the Millers filed a letter stating "in lieu of filing their own brief in the above-referenced matter, Appellants, Andy and Ida Miller, hereby join in, and adopt by reference, the arguments set forth by additional Appellants, DeCristo and Castle set forth in their brief under cover of July 22, 2014."  Pennsylvania Rule of Appellate Procedure 2137 states "[i]n cases involving more than one appellant or appellee, including cases consolidated for purposes of the appeal pursuant to Rule 513 (consolidation of multiple appeals), any number of either may join in a single brief, and any appellant

*(Footnote Continued Next Page)*

(collectively, Additional Defendants), appeal from the December 17, 2013 order granting summary judgment in favor of Appellee, Jeanne R. Heymann, and denying Appellants' cross-motion for summary judgment. After careful review, we affirm in part, reverse in part, and remand for further proceedings.

The trial court set forth the relevant factual and procedural history as follows.

> In early August, 2008, [the] Millers were seeking bids to purchase the subject property [specifically, a house, a barn, and approximately 53 acres in Leroy Township, Bradford County, Pennsylvania] whereby bidder would complete a "bid sheet," the form of which was prepared by [the] Millers. [Heymann] submitted a written bid of $285,000.00 the first week of August. This bid was rejected by [Mr.] Miller. Thereafter, [] Mr. Miller requested [Heymann] to increase her offer. [Heymann] orally increased her offer to $300,000.00. Mr. Miller rejected this bid as well, but asked her to come to [the] house. While at the Miller home, sitting at a picnic table, [Heymann] offered $305,000.00. Together [Mr.] Miller and [Heymann] prepared a new bid sheet. Mr. Miller admitted that he told Plaintiff that he would accept the offer of $305,000.00. The record reflects that thereafter, the parties discussed and agreed to other details as follows:
>
> a. Arrangements for removal of a grave[;]
>
> b. A closing date of October 15;

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

or appellee may adopt by reference any part of the brief of another. Parties may similarly join in reply briefs." Pa.R.A.P. 2137. As such, we deem the Miller's August 25, 2014 letter a proper exercise of Rule 2137.

c. [The] Millers have right to possess property for up to 60 days after closing[;]

d. Closing costs would be "split" "the normal way"[.]

[Mr.] Miller also admitted that he made notes of the meeting setting forth the above details.

Thereafter, [Mr.] Miller advised that his attorney would prepare a sales agreement. [The Millers'] attorney prepared an agreement of sale containing the terms which was orally agreed to and [the] Millers signed [the written sales agreement] on September 5, 2008. This was telefaxed to [Heymann]'s attorney, Attorney Evan S. Williams, III, by [Mr.] Miller's attorney. [Mr.] Miller agreed that the September 5, 2008, sales agreement contained all the terms discussed. [Heymann], through her attorney's secretary, raised certain deficiencies in the written document as follows:

1. Real estate description, providing the township, tax parcel numbers and acreage pursuant to said tax parcel number;

2. That $500.00 earnest money to be non-refundable, a term which [the] Millers agree was not part of the oral agreement ([] rather, the $500.00 deposit would not be refunded if [Heymann] "backed out[]"[);]

3. That the document should provide that Millers pay utilities until they vacate premises;

4. That time is of the essence clause was not part of the oral agreement and [Mr.] Miller agrees with this[;]

5. That the agreement should state that all oil, gas and mineral rights are to be transferred. However, the document does already provide for this; and

- 3 -

6. That the law requires a property disclosure statement before the buyer could sign the agreement, 68 Pa. C.S.A. § 7301, et seq.

Various other paragraphs that are standard to a sales agreement were also in the agreement and Mr. Miller testified that those various items were discussed and agreed upon. There were also other paragraphs set forth in the agreement for sale that had not been discussed or agreed to (*i.e.* prohibition against assignment of agreement). The memo does not state that the original terms agreed to are rejected or that [Heymann] did not intend to proceed with the agreement that was reached by her and [the] Millers or add new terms and conditions to create a counter offer. The Memo was clarifying the parties['] oral agreement.

On September 6, 2008, [Heymann] purchased twenty (20) acres close to the subject property from [the] Millers' son and daughter-in-law [and] Mr. Miller was present at the time of purchase.

On or about September 12, 2008, [H]eymann beca[me] aware that the Millers were not going to sell her the property. She therefore filed a Praecipe for Writ of Summons and a *Lids* [sic] *Pendens* against the [Millers] and [the subject property] on September 12, 2008.

As a result of the requested clarifications, [the] Millers never followed through with the transaction and subsequently sold the real estate to Additional Defendants DeCristo and Castle.

[Heymann] contends that the bid sheet, along with the sales agreement signed by [the] Millers amounts to a contract and is seeking specific performance. [A]dditional [D]efendants have purchased the real estate subject to the action for specific performance as set forth in their deed.

[The] Millers assert that there was never a written agreement. It is their contention that the changes made by [Heymann] to the sales agreement amounted to a rejection and a counter-offer, which was never accepted. As such, they claim the agreement fails to meet the requirement of the Statute of Frauds. Further, Additional Defendants assert that as a result, there was never a meeting of the minds.

Trial Court Opinion, 12/17/13, at 1-4 (internal citations omitted).

On October 28, 2008, and amended on November 13, 2008, Heymann filed a complaint against the Millers for specific performance based on the written contract for purchase of the subject property for $305,000.00. On April 7, 2010, the Millers filed a motion for summary judgment. On December 10, 2010, following oral argument, the trial court granted summary judgment in favor of the Millers on the basis that Heymann had failed to join Additional Defendants DeCristos and Castles.[2] On January 10, 2011, Heymann filed a notice of appeal.

By judgment order, this Court reversed the trial court orders on October 26, 2011, holding the trial court erred by granting summary judgment based solely on Heymann's failure to join an indispensable party and remanded for the trial court to dismiss Heymann's complaint without prejudice and order Heymann to join the indispensable party. *Heymann v. Miller*, 37 A.3d 1246 (Pa. Super. 2012) (unpublished judgment order).

_____

[2] The transcript of the argument held on the original motion for summary judgment is not part of the certified record.

Thereafter, on December 16, 2011, the trial court entered an order granting Heymann's motion to join Additional Defendants DeCristos and Castles. On December 22, 2011 Heymann filed a new complaint for specific performance against the Millers, DeCristos, and Castles, on the same basis as her original complaint. Heymann subsequently filed a motion for summary judgment on February 26, 2013. On March 15, 2013, the DeCristos and Castles filed a cross-motion for summary judgment which was joined on May 29, 2013 by the Millers. Argument was held on May 17, and July 19, 2013, and on December 17, 2013, the trial court granted summary judgment in favor of Heymann and denied the cross-motion for summary judgment filed by Additional Defendants and joined by the Millers. On January 10, 2014, Additional Defendants filed a timely notice of appeal, and on January 13, 2014, the Millers filed their timely notice of appeal.[3]

On appeal, Appellants raise the following issues for our review.

> [1.] Did the Court of Common Pleas for Bradford County err in granting the [m]otion for [s]ummary [j]udgment of Appellee, Jeanne R. Heymann?
>
> [2.] Did the Court of Common Pleas for Bradford County err in denying the [m]otion for [s]ummary

---

[3] Additional Defendants, the Millers, and the trial court have timely complied with Pennsylvania Rule of Appellate Procedure 1925. Although Additional Defendants and the Millers filed separate Rule 1925(b) statements, they raise identical issues on appeal. Further, in lieu of a Rule 1925(a) opinion the trial court adopts its December 17, 2013 opinion, as it addresses the two issues raised on appeal.

[j]udgment of Appellants, David M. De[C]risto, Amy De[C]risto, Randy L. Castle and Darlene J. Castle?

Appellants' Brief at 9.

Our standard of review of an order granting summary judgment is well settled. Our task is "to determine whether the trial court abused its discretion or committed an error of law[,] and our scope of review is plenary." ***Rodriguez v. Kravco Simon Co.***, --- A.3d ---, 2015 WL 720553, at *1 (Pa. Super. 2015) (citation omitted).

> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. When the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which [he] bears the burden of proof … establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***Cigna Corp. v. Exec. Risk Indem., Inc.***, --- A.3d ---, 2015 WL 836933, at *3 (Pa. Super. 2015) (citation omitted). "[O]ur responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be

decided by the fact-finder." ***Reinoso v. Heritage Warminster SPE LLC***, 108 A.3d 80, 84 (Pa. Super. 2015) (*en banc*) (citation omitted). Consequently, if the record contains evidence that would allow a fact-finder to return a verdict in favor of the non-movant, then summary judgment is not proper. ***Id.***

Appellants' statement of questions presented sets forth the general proposition that the trial court erred in granting summary judgment in favor of Heymann and denying Appellants' motion for summary judgment. Appellants' Brief at 9. Appellants' then divide the argument section of their brief into six subsections addressing various trial court errors, including those raised in the respective 1925(b) statements. For ease of review, we elect to address the issues in the context they were framed in the 1925(b) statements filed by the Millers and Additional Defendants. Accordingly, we address Appellants' claims that (1) the trial court erred in finding that the statute of frauds was not "invoked", and (2) that the trial court erred in finding there was an oral agreement based on a "meeting of the minds" at the picnic table between Mr. Miller and Heymann. Additional Defendants' Rule 1925(b) Statement, 2/3/14; Millers' Rule 1925(b) Statement, 2/5/14.

In their first issue, Appellants argue the trial court erred in concluding the statute of frauds did not apply. Specifically, Appellants argue that "[i]mplicit in the trial court's grant of summary judgment to [Heymann] was a finding that there was an oral agreement between the Millers and []

Heymann." Appellants' Brief at 21. In support of this position, Appellants observe that the trial court found that not only did Mr. Miller admit an oral agreement was reached, but he signed an agreement of sale containing the terms agreed to. *Id.* As such, Appellants aver that "[i]t is difficult to understand how the [trial c]ourt below concluded that by tendering a proposed written agreement of sale, Mr. Miller did anything but invoke the Statute of Frauds." *Id.*

> "The Statute of Frauds instructs that a purported transfer of an ownership interest in real property is not enforceable unless evidenced in writing and signed by the [party] granting the interest." ***Trowbridge v. McCaigue***, 992 A.2d 199, 201 (Pa. Super. 2010). "A writing required by the Statute of Frauds need only include an adequate description of the property, a recital of the consideration and the signature of the party to be charged [with performing]." ***Id.*** A description of the property will satisfy the Statute of Frauds where it describes a particular piece or tract of land that can be identified, located, or found. ***Phillips v. Swank***, 13 A. 712 (Pa. 1888). "A detailed description is not necessary, where the description shows that a particular tract is **within the minds of the contracting parties,** and intended to be conveyed." ***Id.*** at 715 (emphasis added). Regarding the signature element, "there is no requirement in the Statute [of Frauds] or the decisional law that a signature be in any **particular** form. Instead, the focus has been on whether there is some reliable indication that the person to be charged with performing under the writing intended to authenticate it." ***Hessenthaler v. Farzin***, 564 A.2d 990, 993 (Pa. Super. 1989) (emphasis in original) (holding mailgram which appellants sent to appellees confirming sale of real estate constituted "signed writing" for purposes of Statute of Frauds where appellants identified themselves in mailgram,

declared their acceptance, and identified property and consideration involved). Importantly:

> The purpose of the Statute [of Frauds] is to prevent the possibility of enforcing unfounded, fraudulent claims by requiring that contracts pertaining to interests in real estate be supported by written evidence signed by the party creating the interest. Pennsylvania courts have emphasized that the Statute is **not** designed to prevent the performance or enforcement of oral contracts that in fact **were** made. Therefore[:]
>
> > [W]e should always be satisfied with some note or memorandum that is adequate … to convince the court that there is no serious possibility of consummating fraud by enforcement. When the mind of the court has reached such a conviction as that, it neither promotes justice nor lends respect to the statute to refuse enforcement because of informality in the memorandum or its incompleteness in detail.
>
> ***Id.*** at 992–93 (internal citations and quotation marks omitted) (emphasis in original).

***Zuk v. Zuk***, 55 A.3d 102, 107-108 (Pa. Super. 2012) (parallel citations omitted).

At her deposition, Heymann testified that in the course of bidding on the subject property a discussion occurred between Mr. Miller and Heymann regarding raising her bid to over $300,000.00. Deposition of Jeanne A. Heymann, 10/8/09, at 29. Heymann testified that the conversation resulted in an oral agreement between the parties for the sale of the land for $305,000.00.

[Attorney for Appellants]
Q. Did Mr. Miller tell you that evening - - when you completed the second bid sheet, our Exhibit 3, did he tell you that evening that he would accept the $305,000 offered in that bid?

[Heymann]
A. Yes.

Q. Specifically what did he say to you?

A. I'll take it.

*Id.* at 31.

Heymann further noted that no formal written acceptance was provided, and that Mr. Miller refused to accept the $500.00 deposit she tried to give him. *Id.* at 32-33. She also testified that she believed the offer she made had been accepted and the written agreement of sale was a mere formality to be completed.

Q. Is it fair to say that you did not understand the bid sheet to actually be an agreement of sale?

…

A. I made an offer. I felt it was accepted. It was to be put in writing. I felt it was all being done in good faith.

Q. You did not understand the bid sheet with your signature on it in and of itself to be the final agreement of sale?

A. Well, not the final agreement, correct. It was to be put in writing.

Q. The bid sheet was a written offer; is that correct?

A. The bid sheet was a written offer.

Q. You said you had an oral acceptance of that offer.

A. Yes.

*Id.* at 35-36.

Heymann went on to state that she received a written agreement of sale from the Millers which she reviewed and discovered various issues with. *Id.* at 37. Heymann's attorney revised the written agreement and sent it back to the Millers' attorney, who then contacted Heymann to advise her that the Millers were not going to accept Heymann's revised contract. *Id.* at 46. In her brief in support of the trial court's grant of summary judgment in her favor, Heymann argues that she intended to accept Mr. Miller's written agreement of sale and her suggested changes are proof of her "intent to carry forward with the purchase of the Millers' real estate." Heymann's Brief at 14.

On the contrary, Mr. Miller testified that it was always his belief that the sale would not be final until a written agreement had been signed and accepted. In his deposition Mr. Miller testified as follows.

[Attorney for Heymman]
Q. Did you tell her you would take her $305,000 price offer?

[Mr. Miller]
A. [Heymann] offered a down payment. I refused it. She asked, what if somebody comes and offers you more and I said, I can't make any promises.

Q. Did you tell her you would take her $305,000 offer?

A. I said I would take this writing in to the attorney's office and get it put together.

Q. Did you say you would take the [$]305,000 is what I am asking?

A. Verbally, yes.

Q. Okay.

A. We had the agreement - -

Q. You mean orally, yes.

A. Orally, yes.

Deposition of Andy L. Miller, 10/8/09, at 17.

Mr. Miller's attorney drafted a written agreement of sale which was signed by the Millers and forwarded to Heymann. *Id.* at 19. Mr. Miller however, upon receipt of Heymann's proposed changes, which he deemed a counter-offer, ultimately rejected the same. As such, Mr. Miller believed there was no agreement of sale.

Instantly, we conclude the trial court erred in granting summary judgment on the basis that the statute of frauds was not invoked and that an oral agreement existed; therefore, ordering specific performance by the Millers was an error of law. The conflict between Heymann and Mr. Miller's accounts of whether an oral or written agreement was reached presents an issue of material fact. There is an uncertainty as to whether the parties had a true meeting of the minds. Specifically, whether the parties intended the

oral discussion to constitute a binding contract, or whether said discussion was to be reduced to writing. Because we conclude that there is an issue of material fact, summary judgment was improper. **Cigna**, **supra**.

Additionally, we note that Appellants also argue that the trial court erred in denying their cross-motion for summary judgment. Specifically, Additional Defendants argue that Heymann's addition of certain terms to the Millers' written instrument constituted a counter-offer, which the Millers were free to reject. Therefore, Additional Defendants argue that no contract for sale of the subject property was ever formed, and the trial court erred in denying their cross-motion for summary judgment. However, for all the reasons we have given, whether or not Heymann's actions amounted to a counter-offer is contingent on a factual finding that there was no meeting of the minds during the oral discussion as Mr. Miller testified to in his deposition. As Additional Defendants' argument is contingent on the resolution of a factual question, we conclude the trial court properly denied their cross-motion for summary judgment.

Based on the foregoing, we conclude the trial court erred in granting summary judgment in favor of Heymann. **See Rodriguez**, **supra**. However, we also conclude the trial court properly denied Appellants' cross-motion for summary judgment. Accordingly, the trial court's December 17, 2013 order is affirmed in part, reversed in part, and the case is remanded for further proceedings, consistent with this memorandum.

Order affirmed in part and reversed in part. Case remanded. Jurisdiction relinquished.

Justice Fitzgerald concurs in the result of the memorandum.

Judge Stabile files a concurring memorandum in which Justice Fitzgerald concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/18/2015